Mary E. Bacon, Esq.
(NV Bar No. 12686)
SPENCER FANE LLP
300 S. Fourth Street, Suite 1600
Las Vegas, NV 89101
Telephone: (702) 408-3400
Facsimile: (702) 408-3401
Email: mbacon@spencerfane.com
*Attorneys for Defendant*
*USAA Casualty Insurance Company*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **JEFFREY JOHNSON**, individually,<br><br>    Plaintiff,<br><br>v.<br><br>**USAA CASUALTY INSURANCE COMPANY**; DOES 1 through X, and ROE CORPORATIONS I through X; inclusive,<br><br>    Defendant. | Case No. 2:22-cv-00532<br><br>**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MARC BECKERMAN** |

**Table of Contents**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | LEGAL STANDARDS GOVERNING EXPERT TESTIMONY | 3 |
| III. | ARGUMENT | 4 |
| a. | Beckerman lacks sufficient qualifications. | 4 |
| b. | Beckerman's testimony should be excluded in its entirety. | 5 |
| c. | Beckerman's bad faith opinions should be excluded. | 6 |
| d. | Beckerman's case value opinions should be excluded. | 6 |
| e. | Opinions regarding removal and USAA CIC's corporate structure are improper. | 10 |
| f. | Beckerman's medical opinions should be excluded. | 12 |
| g. | Legal conclusions and improper ultimate issue opinions should be excluded. | 14 |
| h. | Improper characterization opinions should be excluded. | 18 |
| i. | Beckerman should be precluded from opining that USAA CIC failed to evaluate Plaintiff's UIM claim. | 21 |
| j. | Beckerman's opinions regarding independent medical exam credibility or intent should be excluded. | 22 |
| k. | Beckerman's opinions regarding the qualifications and credibility of USAA CIC's retained insurance expert should be excluded. | 24 |
| l. | Beckerman's opinions regarding Plaintiff's surveillance should be excluded. | 24 |
| m. | The opinions regarding USAA CIC's post-litigation conduct should be excluded. | 25 |
| IV. | CONCLUSION | 26 |

## I. INTRODUCTION

In this case arising out of an underinsured motorist claim, plaintiff Jeffrey Johnson ("Plaintiff") alleges USAA Casualty Insurance Company ("USAA CIC") breached its insurance contract and violated Nevada's Unfair Claim Practices Act[1] by failing to settle Plaintiff's UIM claim, while USAA CIC maintains that it did not owe Plaintiff any UIM benefits under his policy because he had been adequately compensated for his injuries by other sources, including from tortfeasors' insurance and from worker's compensation.[2] To support his claims at trial, Plaintiff disclosed licensed attorney Marc Beckerman ("Beckerman") as an expert in insurance claims handling.

USAA CIC moves to preclude Beckerman's testimony in its entirety because all of his opinions are inextricably intertwined with improper opinions, assumptions, and/or conclusions. If allowed to testify, USAA CIC moves to exclude Beckerman's opinions that do not comply with the federal rules, as stated below.  A statement regarding the parties' meet and confer is attached as **Exhibit F**.

## II. LEGAL STANDARDS GOVERNING EXPERT TESTIMONY

Federal Rule of Civil Procedure 26(a)(2)(B) requires a retained expert witness to produce a written report containing, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Failure to comply with Rule 26(a)(2)(B)'s written report requirements is a basis to exclude the expert's opinions under Fed. R. Civ. P. 37(c).

The admissibility of expert testimony at trial is generally governed by Fed. R. Evid. 702. "Trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that any such testimony or evidence admitted is both relevant and reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Expert testimony is only potentially admissible if it concerns matters "beyond the common knowledge of the average layperson." *U.S. v. Hanna*, 293

---

[1] Plaintiff also brought a claim for breach of the covenant of good faith and fair dealing. The Court granted USAA CIC's motion for summary judgment on that claim. ECF #179.

[2] The facts and issues of the case are more thoroughly discussed in USAA CIC's Motion for Summary Judgment. *See* ECF #114, at pp. 5-15.

F.3d 1080, 1086 (9th Cir. 2002) (internal citation omitted).

Even if expert testimony is admissible under FRE 702, the Court may exclude it "if its probative value is substantially outweighed by a danger" identified in Federal Rule of Evidence 403. Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it[,]" "the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal citation omitted).

### III. ARGUMENT

#### a. <u>Beckerman lacks sufficient qualifications.</u>

Plaintiff intends to produce Beckerman as an expert witness in two roles: an insurance claims expert and an attorney.  Although Beckerman may have "34 years of experience in insurance claims management, insurance defense, and multi-line claims handling[,]"[3] he lacks *recent* knowledge, skill, experience, training, or education sufficient to express currently reliable opinions. Beckerman is currently a "practitioner in the litigation and insurance claim consulting firm of Marc D. Beckerman & Associates" where he works as "an expert and consultant."[4] From 1979 until 1991, he was an insurance claims adjuster.[5] After graduating law school in 1990, he practiced as a defense attorney from 1991 to 1992 before working for various insurance or claims companies from 1992 to 2013.[6] Beckerman does not consider his expert witness and consulting work as part of his 34-year career relevant to his qualifications as a purported expert.[7]

Beckerman lacks recent specialized knowledge to express reliable expert opinions based on sufficient facts and data and sound methodology to the extent that his relevant career ended at the latest in 2013, his last relevant publication was in 1997, and his last relevant seminar was in 2000. *Id*. at pp. 2-4. To the extent that Beckerman claims to "keep current on matters involving … the

---

[3] Beckerman's Expert Report, **Ex. A**, at p. 2.
[4] *Id*. at p. 1.
[5] *Id*. at pp. 3-4.
[6] *Id*. at pp. 2-3. Beckerman worked at USAA from approximately 1992 to 1997. *Id*. at p. 2.
[7] *See id* generally.

insurance industry and claims handling by belonging to multiple professional organizations[,]" the organizations listed are all <u>legal</u> organizations,[8] not insurance organizations.[9] Beckerman's CV from 2011 shows the same memberships, meaning Beckerman's specialized knowledge is essentially dated in 2013 at the latest.[10] Ultimately, Beckerman lacks specialized knowledge to express sufficiently reliable expert testimony that would assist the trier of fact, and therefore he should be precluded from testifying as an expert.

**b. <u>Beckerman's testimony should be excluded in its entirety.</u>**

Regardless of his qualifications, Beckerman's Reports and deposition testimony demonstrate at least three overarching fundamental misunderstandings regarding his role as an expert witness that ultimately taint all his opinions. First, despite that an expert must provide all opinions and the basis for them in a written report, Beckerman expressed multiple opinions at his deposition that were not in his Expert Report (**Ex. A**) or Rebuttal Report (**Ex. B**). Disregarding the requirements of Rule 26(a)(2)(B)(i),[11] he plans to testify at trial "precisely the way I'm testifying today."[12] Second, Beckerman believes it is his role to express opinions that define and apply the law to the facts,[13] including regarding statutory compliance,[14] and that he will do so at trial.[15] Third, he believes it is his role to express opinions regarding credibility and that weigh the evidence.[16] Beckerman's flawed understanding of his role pervades all of his opinions such that they are each inextricably intertwined with violations of the federal rules. "Courts regularly exclude expert testimony that make[] [the] sorts of sweeping generalizations" made by Beckerman here.[17] The Court should decline to "parse

---

[8] Beckerman is a member of the State Bar of California, the American Bar Association, and the American Trial Lawyers Association.

[9] *Id*. at p. 4.

[10] Beckerman's 2011 CV was filed in *Crews-Jones v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-CV-00203, ECF # 16, pp. 15-25.

[11] Beckerman acknowledged that the purpose of expert reports is to disclose all expert opinions. *See* Beckerman's Deposition Transcript, **Ex C**, at 78:14-21.

[12] **Ex. C**, at 56:14-20; 60:8-25; 61:1-23; 72:11-18.

[13] *Id*. at 122:5-9.

[14] *Id*. at 116:15-18, 120:23-25, 121:1.

[15] *Id*. at 117:1-4, 122:10-13.

[16] *Id*. at 89:10-24; 149:11-23; 154:19-25; 155:1-2; 157:1-5; 159:6-9; 217:20-25; 218:1-2.

[17] *Basu v. Massachusetts Mut. Life Ins. Co.*, No. 2:20-CV-01432-JCM-BNW, 2023 WL 1765676, *3 (D. Nev. Feb. 3, 2023).

out the [limited] admissible portions" of Beckerman's opinions and preclude his testimony in its entirety.[18]

### c. Beckerman's bad faith opinions should be excluded.

The Court has entered summary judgment in favor of USAA CIC on Plaintiff's bad faith claim. ECF #179. Beckerman's opinions that USAA CIC committed bad faith (including their substantive equivalents such as that USAA CIC did not act in good faith or that USAA CIC acted unreasonably)[19] should be excluded because they are not relevant to any issue in the case and, therefore, unhelpful.[20]

### d. Beckerman's case value opinions should be excluded. [21]

At his deposition, Beckerman stated opinions regarding the current "value of [Plaintiff's] case" not found in his written reports. Although his Expert Report reflected opinions regarding how USAA CIC allegedly should have valued Plaintiff's UIM claim for claim settlement purposes (pre-suit), his case value opinions refer to Plaintiff's alleged damages at trial and therefore are substantively different and go far beyond any opinion in his reports.

The crux underlying all of Plaintiff's case is his argument that he was entitled to UIM benefits under his USAA CIC policy after recovering approximately $197,037.86 for his injuries from other sources.[22] Beckerman opined that USAA CIC's failure to offer more than $0 to settle Plaintiff's UIM claim evidenced violations of the Unfair Claims Practices Act.[23] That opinion is

---

[18] *See, e.g., Basu v. Massachusetts Mut. Life Ins. Co.*, No. 2:20-CV-01432-JCM-BNW, 2022 WL 4290306, at *5 (D. Nev. Sept. 15, 2022) (striking expert's report because nearly all of the expert's opinions were improper legal conclusions); *Hansen Const. Inc. v. Everest Nat. Ins. Co.*, No. 16-cv-02902-CMA-GPG, 2019 WL 2602510, at *4-5 (D. Colo. June 25, 2019) (precluding expert from testifying when all opinions were intertwined with improper opinions); *Pearlman v. Cablevision Sys. Corp.*, No. 10-CV-4922-JS-GRB, 2015 WL 8481879, at *10 (E.D. N.Y. Dec. 8, 2015) (similar holding).
[19] Beckerman's reports and deposition testimony are replete with such opinions. *See, e.g.,* **Ex. A**, pp. 8, 11-16, 19, 22-29; **Ex. B**, pp. 2-8; **Ex. C**, 188:3-11; 214:1-10.
[20] *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful") (citation omitted).
[21] Beckerman's case value opinions are reflected in **Ex. C**, pp. 14-28; 31:9-25; pp. 32-59; and 77:9-16.
[22] *See* ECF # 114, pp. 5-6; ECF #114-2 (policy reflecting $100,000 UIM policy limits).
[23] **Ex. A**, pp. 11-12.

based on his underlying analysis that USAA CIC should have valued Plaintiff's UIM claim between "$201,530 - $316,310" for claim settlement purposes (what he referred to as "UIM settlement number(s)").[24] Beckerman's reports do not facially purport to include opinions regarding the value of Plaintiff's case in this litigation.

However, Beckerman now intends to testify regarding Plaintiff's *current* case value, i.e. his purported damages.[25] Generally summarized, Beckerman plans to testify that Plaintiff's "reasonable" case value is between $1,000,000 and $2,000,000 based on unscheduled future medical treatment not recommended by Plaintiff's treating providers, and could be worth $3,000,000 to $8,000,000 depending on the success of that medical treatment.[26] The case value opinions are improper and should be excluded on multiple grounds.

First, they violate Rule 26(a)(2)(B)(i) because Beckerman's reports did not include any opinions regarding the value of Plaintiff's case. Beckerman admitted that after he drafted his reports he "informally" took it upon himself to evaluate the case with a dollar amount[27] and that he had not written down case value opinions before his deposition.[28] Despite Beckerman's assertion that his Expert Report contained case value opinions,[29] in reality it only included an analysis regarding how USAA CIC should have valued Plaintiff's claim for purposes of settling it pre-suit.[30] Beckerman's case value opinions further violate Rule 26(a)(2)(B)(i) and (ii) because they were not written down

---

[24] *Id.*

[25] **Ex. C**, 14:2-11.

[26] *Id.* at 14:12-20; 16:17-24; 23:1-22; 45:3-13; 48:3-11.

[27] *Id.* at 18:10-17.

[28] *Id.* at 46:24-25; 47:1-12; 50:4-8; 56:17-25; 57:1-14; 59:1-6; 178:3-25.

[29] *Id.* at 15:10-21.

[30] **Ex. A**, pp. 11-12.

or produced to USAA CIC before his deposition,[31] and were "informally" developed[32] using internet research[33] that was not produced to USAA CIC.[34]

Beckerman apparently believes that a claim adjuster's determination of "reasonable" pre-suit "UIM settlement number(s)"[35] is synonymous with an expert witness opining on the "value of the [insured's] case" at trial.[36] That belief is incorrect as a matter of Nevada law. To establish insurer bad faith, the insured must first establish "legal entitlement" to UIM benefits under the policy, and then establish that the insurer acted unreasonably concerning its obligations to the insured.[37] An insured is legally "entitled" to recover UIM benefits when the insured establishes fault on the part of the uninsured motorist and the extent of the insured's damages.[38] Only after "legal entitlement" is shown can an insurer commit bad faith by "refus[ing] 'without proper cause' to compensate the insured for a loss covered by the policy."[39]

Here, Beckerman's report opinion regarding "UIM settlement number(s)" pertained to Plaintiff's foundation to submit a bad faith claim at trial, meaning it attempted to establish Plaintiff's purported entitlement to recover UIM benefits under his policy and USAA CIC's alleged unreasonable behavior in refusing to compensate Plaintiff "for a loss covered by [it]."[40] Because Plaintiff's bad faith claim is no longer in the case, Beckerman's opinions on current case value are irrelevant and unhelpful. Further, Beckerman's opinions cannot establish Plaintiff's damages at trial

---

[31] **Ex. C**, 46:24-25; 47:1-12; 50:4-8; 56:17-25; 57:1-14; 59:1-6.
[32] *Id*. at 18:10-17.
[33] *Id*. at 16:17:3-6.
[34] *Id*. at 77:1-16.
[35] *Id*. at p. 11.
[36] **Ex. C**, 14:2-20; 15:19-25; 16:1-11.
[37] *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382-384 (1993).
[38] *Id*.
[39] *Id*. at 382.
[40] *Id*.

given it is the factfinder's role to determine whether an insurer acted unreasonably,[41] as well as to determine causation[42] and damages.[43]

The case value opinions also fail to comply with FRE 702. Beckerman conceded that they are contingently based on Plaintiff's treating providers stating that he will need medically necessary future surgery, <u>which has not happened</u>.[44] Beckerman's case value opinions are not reliably based on qualified medical provider recommendations, but rather are unreliably based on Plaintiff's layperson testimony[45] and on Beckerman's opinions as a former claims adjuster.[46] Neither Plaintiff nor Beckerman are qualified to express medical opinions.[47]

Even if Beckerman arguably was qualified to express medical opinions regarding Plaintiff's claimed future surgery (which he is not), those opinions are unreliably based on Beckerman's extrapolation of information from Plaintiff's deposition testimony and Plaintiff's limited medical records, none of which pre-dated the subject accident.[48] Therefore, Beckerman could not reliably state whether Plaintiff will more likely than not need future surgery due to the subject accident, and ultimately could not reliably express opinions regarding Plaintiff's case value that are explicitly based on Plaintiff's purported future surgery.

Beckerman's case value opinions should also be excluded as improper legal conclusions or improper ultimate opinion conclusions. "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge."[49] "A trial court properly excludes testimony which instructs

---

[41] *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F. Supp. 3d 1193, 1200-1201 (D. Nev. 2018).

[42] *Hermanson v. Century Nat'l Ins. Co.*, No. 2:19-CV-00656-RFB-EJY, 2021 WL 4486348, at *6 (D. Nev. Sept. 30, 2021); *Fredericks v. Travelers Cas. Ins. Co. of Am.*, 521 F. Supp. 3d 1009, 1014–15 (D. Nev. 2021).

[43] *Stackiewicz v. Nissan Motor Corp. U.S.A.*, 100 Nev. 443, 454, 686 P.2d 925, 932 (1984); *Arlitz v. GEICO v. Cas. Co.*, 642 F. Supp. 3d 1214, 1236 (D. Nev. 2022) (vacated in part on other grounds).

[44] *Id*. at 23:14-25; 24:1-15; 25:21-25; 26:1-15, 25; 27:1.

[45] *Id*. at 14:2-20; 14:12-20; 23:16-22; 50:20-25; 51:1-5.

[46] *Id*. at 15:10-25; 16:1-11.

[47] Beckerman claims to have "some" medical training but does not "construe [him]self to be a medical professional." **Ex. C**, 157:10-21. *See* Section III(f) below.

[48] *Id*. at 28:11-25; 29:1-25: 30:1-8; 37:1-21.

[49] *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).

the jury on legal issues or effectively attempts to instruct the jury how to decide."[50] Here, Beckerman's case value opinions plainly instruct the jury how to rule, including regarding causation and damages, and therefore improperly "take from the jury the job of applying facts to law."[51] At least two other courts have excluded Beckerman's opinions that constituted legal conclusions. In *Bond v. Am. Family Mut. Ins. Co.*, Beckerman was precluded from testifying "concerning Arizona case law or statutory law" or expressing "an ultimate opinion concerning whether [an insurer] acted in bad faith."[52] *See also Simms v. State Farm Fire & Cas. Co*, No. 03-CV-01415-PHX-ROS, ECF # 95 (D. Ariz. Dec. 20, 2004), attached as **Exhibit D**. This Court should exclude Beckerman's improper legal conclusions,[53] including his case value opinions.

Finally, the minimal potential probative value of the case value opinions is substantially outweighed by a danger of unfair prejudice to USAA CIC, of confusing the issues, and misleading the jury, and therefore should be excluded under FRE 403. Any opinions that Beckerman could express as a claim adjuster regarding how he would *currently* value Plaintiff's UIM claim are untethered from the standard and issues in this case: whether USAA CIC violated the Unfair Claims Practices Act by failing to pay Plaintiff his demanded UIM benefits before he filed suit.[54]

### e. **Opinions regarding removal and USAA CIC's corporate structure are improper. [55]**

Beckerman intends to opine that USAA CIC's removal from state to federal court was improper because it and USAA are purportedly the same legal entities (and therefore there allegedly

---

[50] *Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD, 2013 WL 431827, at *5 (D. Nev. Feb. 1, 2013) (*citing Shops at Grand Canyon 14, LLC v. Rack Room Shoes, Inc.*, No. 2:09-CV-01234, 2010 WL 4181361, at *3 (D. Nev. Oct. 20, 2010)); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-1017 (9th Cir. 2004).

[51] *A.S. v. TC Nevada, LLC*, No. 2:18-CV-01738-APG-EJY, 2024 WL 1905517, at *4 (D. Nev. Apr. 30, 2024).

[52] No. CV-06-1249-PHX-DGC, 2008 WL 6259240, at *1 (D. Ariz. Apr. 17, 2008).

[53] *See* Section III(g) below.

[54] Although the duty of good faith continues after litigation is commenced, insurers do not have a "broad affirmative duty to evaluate an insured's claim post-litigation." *Iovino v. Am. Trust Fin. Services*, No. 2:22-CV-01974-APG-NJK, 2024 WL 4696161, at *4 (D. Nev. Nov. 6, 2024).

[55] These opinions may be found in **Ex. C**, pp. 60-71; 77:1-16; 79:24-25; pp. 80-88; pp. 166-169.

Case No. 2:22-cv-00532

was no diversity of citizenship) and because USAA CIC internally set its reserves at $10,000 for Plaintiff's UIM claim (and therefore the amount in controversy requirement allegedly was not met).[56] Outside of USAA CIC's removal in this case, he plans to testify regarding the general intent of all insurers in removing cases.[57]

Beckerman's opinions are plainly improper. First, they are directly contradicted by the Court's prior ruling denying Plaintiff's Motion to Remand.[58] If that were not enough, Beckerman's opinions are unreliable, irrelevant, unhelpful, would confuse the issues, and would mislead the jury because they reflect improper legal conclusions based on incorrect legal standards. Beckerman claims to have found "a line of cases" that supported his legal arguments, although he did not produce his research and could not remember the cases during his deposition.[59] Regardless, Beckerman's opinions are based on his ultimate legal conclusion that "anytime a case is removed … it causes a delay" that can itself constitute insurer bad faith.[60] In this case, Beckerman argues USAA CIC's removal delayed compensating Plaintiff by three months.[61] When asked about the purported three month delay, Beckerman could not recall the specifics.[62]

It is well-accepted that the Court determines whether the amount in controversy requirement is met based on whether "it is facially apparent <u>from the complaint</u> that the jurisdictional amount is in controversy[,]"[63] not the dollar amount that an insurer internally set as reserves for its insured's claim. And the Court determines whether the diversity of citizenship requirement is met based on

---

[56] *Id*. at 86:9-17; 87:3-14; **Ex. A**, pp. 25-26.
[57] **Ex. C**, 169:4-14.
[58] *See* ECF # 24 (Order denying Plaintiff's Motion to Remand).
[59] **Ex. C**, 62:25; 63:1-25; 64:1-25; 65:1-25.
[60] **Ex. A**, pp. 25-26; **Ex. C**, 80:5-25; 81:1-12.
[61] **Ex. C**, 80:5-25; 81:1-25.
[62] *Id*. at pp. 82-85.
[63] *Lowdermilk v. U.S. Bank Nat. Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (overruled on other grounds) (emphasis added and internal citation omitted).

Case No. 2:22-cv-00532

the citizenship of proper parties to the lawsuit, not fraudulently joined parties.[64] Beckerman has no support for his removal opinions.

Moreover, Beckerman did not express any opinions regarding diversity of citizenship or the corporate structure of USAA CIC in his written reports, and therefore his opinions should be excluded for violating Rule 26(a)(2)(B)(i).[65] They should also be excluded for violating Rule 26(a)(2)(B)(ii) because he conducted research that was not produced to USAA CIC.[66]

Even if these opinions were properly disclosed and arguably reliable, they are irrelevant because, generally, "an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage."[67] Beckerman's opinions regarding the collective general intent of insurers in removing cases from state to federal court should also be excluded as speculative, irrelevant, unreliable, and unhelpful.

### f.  Beckerman's medical opinions should be excluded.

Beckerman intends to express medical opinions at trial, such as that the subject accident exacerbated Plaintiff's prior medical conditions,[68] that Plaintiff was an "eggshell plaintiff,"[69] that Plaintiff's medical treatment was "reasonable and appropriately undertaken,"[70] that the IME physicians who examined Plaintiff downplayed his injuries,[71] that Plaintiff had progressive and worsening medical conditions,[72] and regarding medical causation.[73] Such opinions are improper.

---

[64] *See* ECF # 1 (USAA CIC's Petition for Removal), at pp. 1-7; ECF # 24.
[65] **Ex. C**, 60:9-25; 61:1-23.
[66] *Id*. at 62:25; 63:1-17; 64:7-25; 65:1-25; 66:15-25; 67:1-18.
[67] *Allstate Fire & Cas. Ins. Co. v. Drakulich*, 529 P.3d 1104, 2023 WL 2672010, at *5 (Nev. Mar. 28, 2023) (*citing Abueg v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-CV-00635-GMN-GWF, 2014 WL 5503114, at *3 (D. Nev. Oct. 30, 2014). *See also* Section III(m).
[68] **Ex. A**, pp. 11, 15, 18, 24.
[69] *Id*.
[70] *Id*.
[71] *Id*. at p. 25.
[72] **Ex. C**, at 16:7-9.
[73] *Id*. at 28:3-10.

Case No. 2:22-cv-00532

First, Beckerman lacks qualifications to express medical opinions. Although Beckerman claims to have "some" medical training that is neither described nor disclosed, he conceded that he does not "construe [him]self to be a medical professional."[74] As such, Beckerman is unqualified to state medical opinions that are not supported by qualified medical providers.[75]

Second, Beckerman developed his medical opinions using an unreliable methodology, including by failing to consider Plaintiff's prior medical records,[76] and by relying on Plaintiff's layperson testimony and opinions.[77] Unreliable medical testimony, even from qualified medical providers, should be excluded.[78] Beckerman essentially asks this Court to permit him to be a conduit of medical opinions that qualified medical providers have not expressed. And there is no reason to believe that the medical community would find it acceptable for Beckerman to make these determinations by simply reviewing limited medical records and reading Plaintiff's deposition transcript, especially when these opinions were solely developed for litigation.

Third, several of Beckerman's medical opinions, such as that Plaintiff was an "eggshell plaintiff" and that the subject accident caused Plaintiff's injuries, are improper legal conclusions or improper ultimate issue opinions.[79] Plaintiff bears the burden of proving medical causation,

---

[74] **Ex. C**, 157:10-21.
[75] "Under Nevada law, 'when an injury or disability is subjective and not demonstrable to others [], expert medical testimony is necessary before a jury may award future damages[,]" meaning testimony "by a physician or medical professional." *Hendrix v. Progressive Direct Ins. Co.*, No. 2:20-CV-01856-RFB-EJY, 2023 WL 2610167, at *2-3 (D. Nev. Mar. 22, 2023) (internal citation omitted). *See also Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 2:07-CV-00060-KJD-LRL, 2009 WL 2197370, at *6 (D. Nev. July 23, 2009) (plaintiffs bear the burden of proof on proving medical causation to a reasonable degree of medical probability) (internal citations omitted).
[76] **Ex. C**, 37:19-21.
[77] **Ex. C**, 14:2-20; 24:2-25; 25:21-25; 26:1-15, 23-25; 27:1-6.
[78] *See, e.g., Carmody v. State Farm Mut. Auto. Ins. Co.* No. 6:14-CV-830-ORL-37KRS, 2015 WL 5542534, at *3 (M.D. Fla. Sept. 18, 2015) (precluding medical expert witness' testimony when the opinions were based on an incomplete medical history); *Chebbani v. U.S. Dep't of Agriculture*, No. 5:21-CV-04298-JMG, 2023 WL 3182932, at *8-9 (E.D. Pa. May 1, 2023) (similar holding).
[79] *See* Section III(g) below.

including by apportioning injuries, treatment, and damages between his pre-existing conditions and subsequent injuries, and the jury will make those determinations at trial.[80]

To the extent that Beckerman intends to express opinions based on his extrapolation of information from Plaintiff's medical records, those opinions should be excluded under FRE 403 because their limited probative value is outweighed by being unnecessarily cumulative.

### g.  Legal conclusions and improper ultimate issue opinions should be excluded.

Beckerman's opinions that apply the law to the facts and/or that direct the jury how to rule are improper and should be excluded. "[E]xpert testimony is not proper for issues of law because the role of experts is to interpret and analyze factual evidence and not to testify about the law."[81] For example, in *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, the Ninth Circuit Court of Appeals held that the district court did not err in excluding an expert's opinions that were improper subject matter for experts, including opinions that (1) applied statutory law to the facts, (2) applied common law to the facts, (3) discussed the parties' respective legal rights, duties, and obligations under the law, (4) labeled the parties' actions as "wrongful or "intentional," and (5) discussed the formula for calculating damages.[82] USAA CIC moves to exclude similar opinions expressed by Beckerman.

First, his opinions that USAA CIC committed bad faith should be excluded not only because the Court has entered summary judgment on that claim but also because they constitute impermissible legal conclusions.[83] *See Basu*, 2023 WL 1765676, at *3 (collecting cases). Second, his opinions that USAA CIC violated Nevada statutes or regulations should be excluded.[84] *Nationwide Transp. Fin.*, 523 F.3d at 1058-1059 (expert opinions regarding the violation of statutes

---

[80] *Schwartz*, 2009 WL 2197370, at *6. *See also Fredericks*, 521 F. Supp. 3d at 1014-15 ("disputed questions of proximate cause and the extent of damages are generally left to the jury's assessment").
[81] *Shops at Grand Canyon 14, LLC*, 2010 WL 4181361, at *3.
[82] 523 F.3d 1051, 1058 (9th Cir. 2008).
[83] **Ex. A**, pp. 8, 11-16, 19, 22-29; **Ex. B**, pp. 2-8; **Ex. C**, 188:3-11; 214:1-10.
[84] **Ex. A**, pp. 11, 12, 14, 15, 16, 18, 20, 26; **Ex. B**, pp. 1-5; **Ex. C**, 116:9-25; 117:1-4; 120:23-25; 121:1.

were properly excluded); *A.S.*, 2024 WL 1905517, at *4-5 (expert's opinion that a party complied with statute was improper).

Third, his opinions regarding Plaintiff's damages, such as that Plaintiff's alleged damages include "loss of benefits due and owing under the [policy], interest on the unpaid benefits, significant legal fees and expenses being incurred, resultant anxiety and emotional distress, and the like," should be excluded.[85] The jury, not expert witnesses, determine "disputed questions of proximate cause and the extent of damages" as instructed by the Court.[86]

Fourth, his opinions regarding insurance coverage, policy language, policy interpretation, Plaintiff's alleged legal entitlement to UIM benefits,[87] and USAA CIC's contractual offsets should be excluded.[88] The "interpretation of an insurance contract is a question of law, to be decided by the court."[89] As to legal entitlement under the policy, "[a] trier of fact must decide if Plaintiff's injuries for which he was treated and/or his need for future surgery was caused by" the subject accident.[90]

Fifth, his opinions regarding USAA CIC's alleged misrepresentations, omissions, concealment, and/or fraud, or otherwise regarding USAA CIC's honesty or lack thereof, should be

---

[85] **Ex. A**, p. 28.

[86] *Fredericks*, 521 F. Supp. 3d at 1014–15.

[87] Many of Beckerman's opinions are plainly based on his conclusion that Plaintiff was entitled to UIM benefits and therefore USAA CIC's various actions that did not provide him those benefits was wrongful. *See, e.g.,* **Ex. A**, pp. 16 ("Plaintiff … denied policy benefits to which he is entitled"); 19 ("[Plaintiff] still had not been adequately compensated"); 22 (USAA CIC "would not pay its insured his UIM benefits"); 23 (Plaintiff "is further denied his UIM benefits that are long (over)-due and owing"); 24 (Plaintiff had "been denied UIM policy benefits to which he is entitled"); 26 (similar opinion); 28 (similar opinion); and 29 (similar opinion).

[88] **Ex. A**, pp. 16-17, 19, 22-24, 26, 28-29; **Ex. B**, p. 3-4, 8; **Ex. C**, pp. 134-139.

[89] *Hermanson v. Century Nat'l Ins. Co.*, No. 2:19-CV-00656-RFB-EJY, 2021 WL 4486348, at *3 (D. Nev. Sept. 30, 2021) (internal citations omitted). *See also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("the interpretation of the insurance policy is a question of law for the court"); *Crow Tribe of Indians v. Racicot,* 87 F.3d 1039, 1045 (9th Cir. 1996) (excluding expert's testimony that interpreted a contract and applied the facts of the case); *Golden Bear Ins. Co. v. Evanston Ins. Co.*, 220CV00027RFBEJY, 2021 WL 2481667, at *6 (D. Nev. June 17, 2021) (striking expert's opinions interpreting insurance contracts at issue because they fell "within the area reserved strictly for the Court").

[90] *Molina v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-CV-0051-KJD-VCF, 2022 WL 4448202, at *8 (D. Nev. Sept. 23, 2022).

excluded.[91] *Nationwide Transp. Fin.*, 523 F.3d at 1058-1059 (expert's opinions that a party acted wrongfully or intentionally properly excluded); *A.S.*, 2024 WL 1905517, at *5 ("case law strongly suggests concluding a party mislead another or made representations … is impermissible opinion testimony as it invades 'the province of the jury by drawing the ultimate inference or conclusion'"); *U.S. v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). These principles are especially pertinent given Plaintiff asserts a claim based on an alleged violation of NRS 686A.310(1)(a) (prohibiting an insurer from "misrepresenting to insureds or claimants pertinent facts or insurance policy provisions related to any coverage at issue").

Sixth, Beckerman expresses various opinions regarding USAA CIC's purported intent, motives, knowledge, or state of mind, such as (1) it "did not care about [Plaintiff's] UIM claim," (2) that it submitted correspondence to "avoid promptly and properly resolving the claim" or "post-justify its earlier UIM evaluation," (3) that it misrepresented facts knowing the "real reason(s) why this UIM claim remained unresolved," (4) that it had an "early intent to not investigate, evaluate, and resolve [Plaintiff's] UIM claim," and (5) that its actions "constitute[d] nothing more than a poorly veiled delay[] tactic."[92] Beckerman does not dispute that his testimony crosses over to USAA CIC's motives.[93] These improper opinions should be excluded. *Nationwide Transp. Fin.*, 523 F.3d at 1058-1059 (expert opinion that a party acted wrongfully or intentionally were properly excluded); *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-CV-01667-ART-MDC, 2024 WL 1377275, at *11 (D. Nev. Mar. 31, 2024) ("courts 'routinely exclude … expert testimony as to intent, motive, or state of mind'") (internal citation omitted).

---

[91] **Ex. A**, pp. 12, 18, 19, 20, 21, 23-25, 27, 29; **Ex. B**, pp. 1, 5, 6; **Ex. C**, 88:2-25; 89:1-6, 21-24; 90:4-16; 91:23-25; 92:1-3; 214:11-15.
[92] **Ex. A**, pp. 16-18, 21-22, 25, 29; **Ex. B**, pp. 2, 6-8; **Ex. C**, 150:6-16.
[93] **Ex. C**, 150:6-25; 151:1-7.

Seventh, his opinions regarding Plaintiff's status as an "eggshell plaintiff" should be excluded.[94] Because Plaintiff bears the burden of proving medical causation, including by apportioning his injuries, treatment, and damages between his pre-existing injuries and his subsequent injuries, Beckerman's opinions would impermissibly direct the jury how to rule.[95] It is the jury's role to determine whether or not Plaintiff was an "eggshell plaintiff."[96]

Eighth, his opinions regarding the impact of USAA CIC internally setting its reserves should be excluded.[97] By internally setting its reserves for Plaintiff's claim at $10,000, Beckerman concludes that USAA CIC determined Plaintiff's claim had value[98] in the amount of $10,000.[99] Beckerman's reserves opinions improperly invade the province of the Court and usurp the role of the jury because they purport to define the law of the case and direct the jury how to rule. Moreover, they are based on a conclusion unsupported by Nevada law. Indeed, this Court has already held in this case that "[n]o reasonable jury could conclude that defendant's $10,000 reserve on file demonstrates that it agrees plaintiff has not been fully compensated."[100] Therefore, Beckerman's opinions regarding the legal effect of USAA CIC setting its reserves is unsupported and even contradictory to Nevada law.

Ninth, Beckerman opines that insurers become *legally obligated* to obtain an insured's medical records when the insurer receives the insured's executed medical authorization.[101] Nevada law does not support his opinion. In Nevada, evidence of medical records that insurers could have obtained with an insured's authorization can be relevant to whether an insurer acted reasonably,

---

[94] **Ex. A**, pp. 11, 15, 18, 24; **Ex. B**, p. 7.
[95] *Schwartz*, 2009 WL 2197370, at *6; *Fredericks*, 521 F. Supp. 3d at 1014–15.
[96] *Fredericks*, 521 F. Supp. 3d at 1014-1015; *Matlock v. Greyhound Lines, Inc.*, No. 2:04-CV-0051-KJD-GWF, 2010 WL 3171262, at *4-5 (D. Nev. Aug. 10, 2010).
[97] **Ex. A**, pp. 11-12, 16, 24-25, 29; **Ex. B**, p. 3.
[98] **Ex. A**, p. 11 ("USAA's $10,000 reserve indicated that this claim did have value").
[99] **Ex. A**, p. 25, 29.
[100] ECF #179, p. 4 (citing *Phoenix Ins. Co. v. Your Vitamins, Inc.*, No. 2:12-CV-00564-MMD, 2013 WL 459226, at *3 (D. Nev. Feb. 5, 2013).
[101] **Ex. A**, p. 13; **Ex. B**, pp. 2-3.

which ultimately "is a question for the jury to resolve."[102] It follows that insurers are not legally required to obtain the insured's records such that they commit bad faith by failing to do so.

### h. Improper characterization opinions should be excluded.

Many of Beckerman's opinions characterize USAA CIC's conduct or actions presumably to suggest to the jury how it should weigh the evidence, determine credibility, and ultimately rule. Some of the characterization opinions use legal terms or phrases, but most of them use lay terminology with Beckerman's intention to "denote [his] emphasis" regarding "how far from normal industry customs and practices and procedures" that USAA CIC's conduct was.[103] These opinions include, without limitation, that USAA CIC's actions or conduct were unreasonable, wrongful, improper, unfair, appalling, dilatory, unwarranted, indifferent, unresponsive, terrible, useless, ridiculous, nasty, cruel, vicious, mean, despicable, unconscionable, inexcusable, egregious, "incredibly bad," "prima facie evidence of bad faith," "evidence of bad faith," "adverse to its insured," "very troublesome," "very wrongful," that it "treat[ed] its insured as the enemy," "incredibly poor treatment," that it "basically [told Plaintiff] to go to hell," that it gave Plaintiff the "finger," and even that USAA CIC's conduct was "downright shitty."[104] Beckerman's characterization opinions should be excluded on several grounds.

Regardless of terminology used, they constitute either improper legal conclusions or improper ultimate issue opinions, if not both. *Nationwide Transp. Fin.*, 523 F.3d at 1058-1059 (expert opinion that a party acted wrongfully or intentionally were properly excluded); *Basu*, 2023 WL 1765676, at *3; *A.S.*, 2024 WL 1905517, at *5. Moreover, they impermissibly opine on USAA CIC's credibility or weigh the evidence. In fact, Beckerman conceded that these opinions included

---

[102] *Rosas v. GEICO Cas. Co.*, No. 2:18-CV-01200-APG-NJK, 2022 WL 2440854, at *2 (D. Nev. Jan. 26, 2022).
[103] **Ex. C**, 149:4-20.
[104] **Ex. A**, pp. 11-16, 18-29; **Ex. B**, pp. 2-3, 5-8; **Ex. C**, 142:17-25, 143:1-14, 147:9-19, 148:7-21, 149:4-23, 185:17-20, 214:11-24, 217:5-23.

his credibility determinations "to some extent," but stated his belief that he was "entitled to provide [his] opinions and conclusions" because "[he is] an expert."[105] Beckerman's belief is incorrect. *See Candoli*, 870 F.2d at 506 ("an expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility").

Additionally, the characterization opinions are unreliable, irrelevant, and unhelpful, and their limited potential probative value is substantially outweighed by dangers of unfair prejudice to USAA CIC, of confusing the issues, and of misleading the jury, because they are speculative opinions untethered to the applicable legal standards and issues in this case. "Rule 702 demands that expert testimony relate to scientific, technical, or otherwise specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs[,]"[106] and be based on "reasonable measures of reliability."[107] Beckerman's characterization opinions, such as that USAA CIC's conduct was "downright shitty," are speculative and based on an extraneous non-legal standard.

Evidence, including expert testimony, must be relevant to potentially be admissible.[108] In *Minden v. Allstate Prop. & Cas. Ins. Co.*, this Court recently precluded a plaintiff in a bad faith lawsuit from presenting to the jury Allstate's commercials "telling customers that they are in good hands … [and that it] will protect them from mayhem" because they were "irrelevant to the issues in the case."[109] The jury's role was not to determine "whether Allstate generally protects against 'mayhem,' or its insureds are generally 'in good hands,'" but rather whether "Allstate breached the insurance contract and engaged in bad faith when it denied or delayed payment under the particular facts and circumstances in this case."[110] Similarly, in *Hatch v. State Farm Fire & Cas. Co.*, the Wyoming Supreme Court held that an expert's opinions regarding how a "good neighbor" would

---

[105] **Ex. C**, 149:11-23, 217:5-23.
[106] *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).
[107] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).
[108] Fed. R. Evid. 401; 402.
[109] No. 2:21-CV-00151-APG-BNW, 2024 WL 2848975, at *2 (D. Nev. June 5, 2024).
[110] *Id*.

act were properly excluded because they pertained to a "non-legal standard" and therefore could not "have assisted the jury in understanding the evidence or determining any of the facts in issue."[111] Here, Beckerman's characterization opinions are similarly improper because they are untethered to an applicable legal standard. Moreover, Beckerman's characterization opinions cannot meet the reliability requirements of FRE 702 because there is no reproduceable, sound methodology to determine whether an insurer's conduct reaches the level of, for example, being "downright shitty."

Further, the characterization opinions are not expert opinions because they do not address an issue "beyond the common knowledge of the average lay person."[112] In this case, the jury will determine whether USAA CIC violated the Unfair Claims Practices Act, for which Beckerman's testimony is unnecessary.[113] The characterization opinions are improper because they "offer[] nothing more than the jury could do itself when reaching the conclusion[s] [Beckerman] did."[114]

Finally, the limited potential probative value of the characterization opinions is substantially outweighed by a danger of unfair prejudice to USAA CIC, of misleading the jury, and of confusing the issues.[115] Beckerman testified that he must be objective as an expert witness and that emotional involvement can "be a problem" for objectivity.[116] He further testified that he gets at least "a little bit emotionally involved" in each case and that he is emotionally involved in this case.[117] When asked whether his characterization opinions reflected emotional objectivity, he testified "No" and

---

[111] 930 P.2d 382, 389 (Wyo. 1997). The court also held that the expert's testimony went beyond the realm of his expertise. *Id.*

[112] *U.S. v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002).

[113] *Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-CV-01257-GMN-PAL, 2010 WL 3724896, at *4 (D. Nev. Sept. 17, 2010) ("expert testimony is not generally required to establish bad faith or other improper handling of claims").

[114] *Hillery v. Sun City Anthem Comm. Ass'n, Inc.*, No. 2:17-CV-02639-MMD-EJY, 2019 WL 5095780, at *11 (D. Nev. Oct. 11, 2019).

[115] *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 927-928 (D. Colo. 2017) (excluding expert "conclusory and prejudicial commentary" such as that the insurer's conduct was "egregious" or "spinning current laws … to their own advantage").

[116] **Ex. C**, 141:2-25; 142:1-13.

[117] *Id.*

that he used the language "to demonstrate incredibly poor treatment by USAA to their insured."[118] In other words, Beckerman acknowledged that his characterization opinions lack objectivity and therefore concedes that they are improper. Faced with similar expert opinions in *Golden Bear Ins. Co. v. Evanston Ins. Co.*, including that it was "no surprise" that an insurance policy contained a particular exclusion, opinions reflecting the expert's "incredulity regarding [an insurer's] decision," and that it was "obvious" what an insurer was attempting to, the Court held that they were improper opinions.[119] Because the characterization opinions are not objective, they have limited probative value while their potential to cause unfair prejudice to USAA CIC or mislead the jury or confuse the issues is great.

### i. Beckerman should be precluded from opining that USAA CIC failed to evaluate Plaintiff's UIM claim.

Beckerman repeatedly opines that USAA CIC failed to evaluate Plaintiff's UIM claim simply because its claim file did not include a document that included every element and analysis that he argues a "formal and complete UIM evaluation" must have, such as "general damages calculations [and] related analysis."[120] Beckerman's opinions are apparently based on what he was taught in 1979 and what he personally did as a claims adjuster,[121] and have been expressly rejected by at least one court.[122] Although USAA CIC does not move to exclude Beckerman's tenuous opinions that USAA CIC's evaluation was not "formal" or "traditional" or "typical" with respect to what he claims are insurance industry standards, it does move to exclude his opinions that USAA

---

[118] *Id*. at 142:17-25; 143:1-14.

[119] 2:20-CV-00027-RFB-EJY, 2021 WL 2481667, at *7-8 (D. Nev. June 17, 2021).

[120] **Ex. A**, pp. 19-20, 23, 27-29; **Ex. B**, pp. 3-6; **Ex. C**, 92:20-25, 93:1-25, 94:1-13, 106:17-25; pp. 107-110.

[121] **Ex. C**, 107:20-25, 108:1-25, 109:1-15; 110:9-21.

[122] *Burns v. Am. Family Mut. Ins. Co.*, No. 1:20-CV-02682-RBJ, 2022 WL 22310207, at *6 (D. Colo. Nov. 21, 2022) ("[t]here is no support in the caselaw that insurers must create categories of a certain specificity or subject matter in evaluating claims, and to attempt to enforce such a requirement would be daunting for courts and unpredictable for insurers").

CIC did not evaluate Plaintiff's UIM claim *at all*, as well as opinions that its evaluation was unreasonable.[123]

First, Beckerman has no basis to opine that UIM evaluations must contain specific elements to constitute a claim evaluation given that he has <u>never</u> seen an injury evaluation as an expert witness or consultant that contained everything he claims are required to be included.[124] The purported basis for Beckerman's opinions is more than a decade old given they are based on his personal experience as a claims adjuster.[125] Beckerman's testimony that he had "no reason to believe that it's not [currently] done that way" is contradicted by Beckerman's concession that he has not seen any injury evaluation with the required elements as an expert witness or consultant.[126]

Second, even if he had any basis for his opinion, Beckerman's Report concedes that USAA CIC's claim file contained "claim summaries" and a Loss Report.[127] Moreover, he specifically referred to the documents in USAA CIC's claim file as a "purported UIM evaluation" and "purported UIM injury evaluation."[128] Regardless of whether Beckerman construes those documents as constituting a "proper" or "traditional" or "typical" injury evaluation,[129] Beckerman obviously lacks a sufficient factual basis to state that they do not exist. Moreover, the limited probative value of such opinions is substantially outweighed by a risk of unfair prejudice to USAA CIC, of confusing the issues, and of misleading the jury.

> **j.  <u>Beckerman's opinions regarding independent medical exam credibility or intent should be excluded.</u>**

---

[123] For reasons stated above, Beckerman's opinions regarding the reasonableness of USAA CIC's evaluation are improper legal conclusions or improper ultimate issue opinions.
[124] *Id*. 109:8-23.
[125] **Ex. C**, 109:8-25; 110:9-21.
[126] *Id*. at 110:9-21.
[127] **Ex. A**, p. 19.
[128] *Id*. at pp. 10-11.
[129] **Ex. C**, 105:10-22.

Beckerman asserts various opinions regarding independent medical examinations. Beckerman's general opinions are that (1) all IMEs and the providers who conduct them "lack credibility for a variety of reasons," (2) they are all "inherently unreliable," (3) they are all biased in favor of insurers, (4) all IME physicians always render favorable opinions to insurers, (5) insurers use IMEs to avoid paying their insureds, (6) all IME physicians are "handpicked and paid for by" insurers, (7) they "rarely recognize accident-related injuries sustained by an injured party," (8) insurers never hire providers who will render unfavorable reports, (9) they are not independent medical exams, (10) they should be called "defense medical exams," and (11) that he discounts them.[130] Beckerman concluded that his general opinions regarding IMEs and the physicians who perform them applied to Plaintiff's IMEs and the physicians who performed them, and therefore that he can opine on their credibility, bias, motives, and medical judgment.[131]

Beckerman's opinions should be excluded because they are unreliable and unhelpful. Beckerman's apparent methodology in developing his opinions was to brainstorm and disclose his own biases and prejudices regarding IMEs and the physicians who perform them, and then conclude that Plaintiff's IMEs and the providers who performed them must have been consistent with his biases and prejudices. As such, his opinions are speculative and simply based on his *ipse dixit*.[132] The opinions are unhelpful because they attempt to usurp the jury's role in determining credibility and weighing evidence. Moreover, Beckerman lacks qualifications to opine that IME physicians lack medical judgment. Finally, the limited potential probative value of the opinions is substantially outweighed by the dangers of unfair prejudice to USAA CIC, of misleading the jury, of confusing the issues, and needlessly presenting cumulative evidence.

---

[130] **Ex. A**, pp. 24-25; **Ex. B**, p. 7, **Ex. C**, 154:19-25, 155:1-25, 156:1-12, 159:10-25, 160:1-25, 161:1-4.
[131] **Ex. C**, 154:10-25, 155:1-25, 156:1-26, 157:1-25, 158:1-25, 159:1-9
[132] "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### k. __Beckerman's opinions regarding the qualifications and credibility of USAA CIC's retained insurance expert should be excluded.__

Beckerman repeatedly attacks the qualifications and credibility of professor Jeffrey Thomas, USAA CIC's retained insurance expert, because his background "is simply that of an academic."[133] Because of Thomas' academic background, Beckerman concludes that Thomas "cannot possibly be qualified to opine (and conclude) as to what constitutes insurance claim standards, practices, customs, and procedures[,]" that his opinions are not accurate or persuasive, and do not contain much merit, and that he should not qualify as an expert.[134]

Beckerman's opinions regarding Thomas' background, qualifications, and credibility should be excluded because they attempt to usurp the jury's role in determining credibility and weighing evidence, as well as the Court's role in determining the admissibility and reliability of expert witness testimony in accordance with the Federal Rules of Evidence.[135] Moreover, Beckerman has no basis for his opinions because the Federal Rules of Evidence specifically provide that a witness may be sufficiently qualified by knowledge and/or education.[136] Further, the challenged rebuttal opinions are improper to the extent that they attack Thomas' qualifications rather than the subject matter of Thomas' opinions.[137]

### l. __Beckerman's opinions regarding Plaintiff's surveillance should be excluded.__

Beckerman asserts opinions based on his conclusion that USAA CIC conducted surveillance on Plaintiff because claim file documentation reflected that USAA CIC paid a company named "Professional Surveillance and Investigation, Inc."[138]  Beckerman conceded that if USAA CIC paid

---

[133] __Ex. B__, p. 1.

[134] __Ex. B__, pp. 1, 4, 5, 7; __Ex. C__, 165:13-25, 166:1-12, 169:21-25, 170:1-25, 174:9-25, 175:1-25, 176:1-3.

[135] *Century-National Ins. Co. v. Gardner*, 460 F. Supp. 3d 1059, 1063 (D. Nev. 2020).

[136] Fed. R. Evid. 702; *Acuity v. Swanson*, 540 P.3d 420, 2023 WL 8946299, at *1 (Nev. Dec. 27, 2023) (holding that an insurance law professor had sufficient specialized knowledge to be expert witness).

[137] "Rebuttal experts are 'proper if they contradict or rebut the subject matter of the affirmative expert report' only." *Sinclair-Lewis v. Smith's Food & Drug Ctrs., Inc.*, No. 2:20-CV-2063-JCM-MDC, 2024 WL 3691785, at *3 (D. Nev. Aug. 7, 2024) (internal citation omitted).

[138] __Ex. A__, pp. 22, 26; __Ex. B__, p. 7, __Ex. C__, pp. 143:1-147:7.

Case No. 2:22-cv-00532

the company to conduct a medical canvas that he did not have any issues with their decision.[139] USAA CIC previously produced the invoice reflecting its payment to Professional Surveillance and Investigation, Inc., as well as the company's "Medical Canvas Report," which demonstrate that USAA CIC did *not* surveil Plaintiff.[140] Beckerman has no basis to support his opinions.

### m. The opinions regarding USAA CIC's post-litigation conduct should be excluded.

"In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage."[141] In addition to his removal-related opinions addressed above, Beckerman expressed other opinions regarding USAA CIC's post-litigation conduct, including the appropriateness of USAA CIC's written discovery responses and the production of its claims file in discovery.[142] Beckerman's opinions are irrelevant and unhelpful. "What is relevant to a bad faith claim is the process defendant undertook to reach its conclusion" "based on evidence that was in defendant's possession at the time" it made its determination that Plaintiff was not entitled to receive UIM benefits under his policy.[143] Although the duty of good faith continues into litigation, "it does not create a broad affirmative duty to evaluate an insured's claim post-litigation."[144] Further, an attorney's "communications and actions taken during the litigation are protected by the absolute litigation privilege" that applies to both the attorney and the client.[145] Here,

---

[139] **Ex. C**, 146:18-25, 147:1-7.

[140] *See* **Exhibit E**, previously produced as USAA-CIC_Johnson_002065 to 002079.

[141] *Allstate Fire & Cas. Ins. Co. v. Drakulich*, 529 P.3d 1104, 2023 WL 2672010, at *5 (Nev. Mar. 28, 2023) (*citing Abueg v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-CV-00635-GMN-GWF, 2014 WL 5503114, at *3 (D. Nev. Oct. 30, 2014)).

[142] **Ex. A**, pp. 24-27, 29.

[143] *Basu*, 2023 WL 1765676, at *4 (applying same analysis to statutory claim). *See also Nielson v. Cal. Capital Ins. Co.*, No. 2:22-CV-0177-TOR, 2023 WL 11091242, at *8 (E.D. Wash. Sept. 29, 2023) ("it was the actions leading up to [USAA CIC's] final offer and before suit was filed that gave rise to the actions that formed the basis of Plaintiff's complaint, not actions taken thereafter").

[144] *Iovino v. Am Trust Fin. Servs., Inc.*, No. 2:22-cv-01974-APG-NJK, 2024 WL 4696161, at *4 (D. Nev. Nov. 6, 2024).

[145] *Searcy v. Esurance Ins. Co.*, 243 F. Supp. 3d 1146, 1155 (D. Nev. 2017).

Case No. 2:22-cv-00532

Beckerman's opinions relate to USAA CIC's legitimate conduct in defending against Plaintiff's claims in litigation.

Moreover, the opinions are unreliable because they simply reflect an application of Beckerman's ultimate conclusions: (1) that Plaintiff was entitled to UIM benefits and (2) basically everything USAA CIC did after receiving Plaintiff's claim demand constituted bad faith. For example, Beckerman opined that USAA CIC's written discovery responses were "vague and incomplete" and that "[p]ossibly providing incomplete or vague discovery responses does not help get a pending UIM clam promptly and properly evaluated and resolved" but instead "tends to further delay the litigation process and to prevent the Plaintiff from receiving the UIM benefits due and owing under the subject policy[.]"[146] Beckerman utilized the same reasoning with respect to his removal opinions: USAA CIC's removal delayed Plaintiff from being compensated.[147] These types of opinions are not based on Nevada law, but rather what Beckerman thinks the law should be.

**IV. CONCLUSION**

For the reasons stated above, USAA CIC requests that the Court exclude Beckerman's testimony, whether in whole or in part.

Dated: April 22, 2025

**SPENCER FANE LLP**

By:  /s/ Mary E. Bacon
　　Mary E. Bacon, Esq.
　　NV Bar No. 12686
　　Jessica E. Chong, Esq.
　　NV Bar No. 13845
　　300 S. Fourth Street, Suite 1600
　　Las Vegas, NV 89101

*Attorneys for Defendant, USAA Casualty Insurance Company*

---

[146] *Id*. at p. 26.
[147] **Ex. A**, p. 26; **Ex. C**, 80:2-24.

**CERTIFICATE OF SERVICE**

On April 22, 2025, I certify that a true and correct copy of **DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MARC BECKERMAN** was filed using the Court's CM/ECF system, which will electronically notify all counsel of record.

- **Marjorie L. Hauf, Esq.**
  mhauf@courtroomproven.com

- **Matthew G. Pfau, Esq.**
  mpfau@courtroomproven.com

- **Bre'Ahn Williams, Esq.**
  bwilliams@courtroomproven.com

/s/ Adam Miller
An employee of Spencer Fane LLP