**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JEFFERY JOHNSON,

Plaintiff,

vs.

UNITED STATES AUTOMOBILE ASSOCIATION, *et al.*,

Defendants.

Case No.: 2:22-cv-00532-GMN-DJA

**ORDER**

Pending before the Court are the Motion for Reconsideration, (ECF No. 235), and Motion to Correct, (ECF No. 236),[1] filed by Plaintiff Jeffery Johnson. Defendant USAA Casualty Insurance Company ("USAA CIC") filed a consolidated Response to both motions, (ECF No. 239), to which Plaintiff filed a consolidated Reply, (ECF No. 240). Further pending before the Court are the Motions in Limine ("Defendant's Motions in Limine"), (ECF No. 249), filed by Defendant USAA CIC. Plaintiff filed a Response, (ECF No. 263). Additionally pending before the Court are eleven Motions in Limine, (ECF Nos. 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262), filed by Plaintiff. Defendant USAA CIC filed Responses, (ECF Nos. 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274).

For the reasons discussed below, the Court GRANTS Plaintiff's Motion to Correct, DENIES Plaintiff's Motion for Reconsideration, GRANTS, in part, and DENIES, in part, Defendant's Motions in Limine, and GRANTS, in part, and DENIES, in part, Plaintiff's Motions in Limine.

///

[1] While filed as separate motions, Plaintiff's Motion for Reconsideration, (ECF No. 235), and Motion to Correct, (ECF No. 236), are identical.

# I. BACKGROUND

This case involves an insurance coverage dispute. On December 6, 2017, Plaintiff was involved in a car accident with William Boise. (Compl. ¶ 9, Ex. A to Pet. Removal, ECF No. 1-1). Plaintiff recovered $115,000 from Boise's insurance policies. (*See* Injury Evaluation, Ex. 1 to Mot. Summ. J., ECF No. 114-1). He also filed a worker's compensation claim and was compensated approximately $8,000 for medical expenses and $74,000 for his permanent partial disability. (Order Granting in Part Mot. Summ. J. 1:24–26, ECF No. 179).

At the time of the accident, Plaintiff held an insurance policy with defendant, which included uninsured/underinsured motorist coverage. (Compl. ¶¶ 14–15, Ex. A to Pet. Removal). On December 27, 2017, Plaintiff notified Defendant of the accident and requested disclosure of his policy benefits. (*Id.* ¶¶ 16–17). After years of correspondence between the parties, Defendant maintained its position that the underinsured motorist coverage was not triggered. (*See generally id.*).

On the day of the accident, Plaintiff reported pain in his left shoulder and submitted issues with that shoulder as part of his worker's compensation claim. (*See* Notice of Injury or Occupational Disease, Ex. 2 to Resp. Mot. Exclude Damages, ECF No. 207-2). After receiving treatment for the injury to his left shoulder, Plaintiff began physical therapy for the injury. (*See* Medical Records from University Medical Center, Ex. 1 to Resp. Mot. Exclude Damages, ECF No. 207-1); (*see also* Medical Records from Nevada Orthopedic & Spine Center, Ex. 3 to Resp. Mot. Exclude Damages, ECF No. 207-3). After being diagnosed with crepitus of the shoulder, Plaintiff continued to experience pain in his left shoulder and discussed a further procedure, total shoulder arthroplasty, with several doctors. (*See* Resp. Mot. Exclude Damages 3:18–5:2, ECF No. 207).

Plaintiff originally brought this case in the Eighth Judicial District Court for Clark Country, Nevada, asserting claims for breach of contract, breach of the covenant of good faith

and fair dealing, and unfair claims practices against Defendant. (*See* Compl., Ex. A to Pet. Removal). Defendant thereafter removed to this Court. (*See* Pet. Removal, ECF No. 1). The Court granted summary judgment on Plaintiff's claim for breach of the convent of good faith and fair dealing, leaving Plaintiff's breach of contract and unfair claims practices claims. (Order Granting in Part Mot. Summ. J. 7:28–8:1).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 60(a)

Under Federal Rule of Civil Procedure ("FRCP") 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion ... with or without notice." Fed. R. Civ. P. 60(a). In determining whether a mistake may be corrected under FRCP 60(a), courts in the Ninth Circuit must focus "on what the court *originally intended* to do." *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1299 (9th Cir. 2014) (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987)) (emphasis in original). The distinction between "clerical mistakes" and mistakes which cannot be corrected under FRCP 60(a) is that "the former consist of 'blunders in execution' whereas the latter consist of instances where the court *changes its mind*." *Blanton*, 813 F.2d at 1577 n.2 (emphasis in original).

### B. Federal Rule of Civil Procedure 60(b)

Under FRCP 60(b), a court may grant relief from a final order on a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) other circumstances justifying relief. Rule 60(b)(1)–(6). "A party seeking reconsideration . . . must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity." LR 59-1. "Motions for reconsideration are disfavored." *Id.*

**C. Motions in Limine**

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] does not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner). To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on all potential grounds." *Ind. Ins. Co v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F.Supp. 1389, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better suited during the actual trial to assess the value and utility of evidence. *Wilking v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

///

///

## III. DISCUSSION

The Court addresses each of the pending motions in turn, beginning with Plaintiff's Motion to Correct.

### A. Plaintiff's Motion to Correct

The Court begins with Plaintiff's Motion to Correct, in which Plaintiff requests that the Court correct a clerical error in its Order Granting, in part, and Denying, in Part, Defendants' Motion to Exclude Expert Testimony of Marc Beckerman (the "Order"). (Mot. Reconsider 2:13–19, ECF No. 235). Specifically, Plaintiff contends that the Order contains an error in the background section, which reads in relevant part:

> Plaintiff originally brought this case in the Eighth Judicial District Court for Clark Country, Nevada, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair claims practices against Defendant. (*See* Compl., Ex. A to Pet. Removal). Defendant thereafter removed to this Court. (*See* Pet. Removal, ECF No. 1). **The Court granted summary judgment on Plaintiff's claims for breach of contract and breach of the convent of good faith and fair dealing, leaving only Plaintiff's unfair claims practices claim.** (Order Granting in Part Mot. Summ. J. 7:28–8:1).

(Order on Mot. Exclude 2:19–25, ECF No. 234) (emphasis added). Plaintiff explains that, contrary to the language of the Order, the Court did not grant summary judgment on Plaintiff's breach of contract claim. (Mot. Reconsider 6:8–19). Rather, the Court only granted summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. (*Id.* 4:1–7) (quoting Order Granting in Part Mot. Summ. J. 7:25–8:1, ECF No. 179).

Plaintiff is correct that the Court's Order ruling on Defendant's Motion to Exclude incorrectly stated the disposition of Court's earlier summary judgment order. Accordingly, the Court GRANTS Plaintiff's Motion to Correct, and will amend the identified portion of the Order to read: "The Court granted summary judgment on Plaintiff's claims for breach of the convent of good faith and fair dealing, leaving Plaintiff's breach of contract and unfair claims practices claims."

**B. Motion for Reconsideration**

Plaintiff next moves the Court to reconsider a portion of its Order Granting, in part, and Denying, in Part, Defendant's Motion to Exclude Expert Testimony of Marc Beckerman. Specifically, Plaintiff contends that the Court committed clear error by precluding Beckerman from testifying regarding the propriety of Defendant's removal of this case. (Mot. Reconsider 6:21–23). However, Plaintiff appears to agree that Beckerman cannot testify as to the legal propriety of removal, requesting instead that he be permitted to testify that by removing this case to federal court, Defendant acknowledged that Plaintiff's claim had a value in excess of $75,000. (*Id.* 7:3–7). In response, Defendant argues that this purported testimony is a re-packaging of an impermissible legal conclusion as an opinion about claim evaluation. (Resp. Mot. Reconsider 7:2–21, ECF No. 239).

The Court agrees with Defendant that Beckerman's proposed testimony regarding the removal of this case is essentially a legal conclusion. Further, as Defendant points out, it would be an incorrect one; removal is based on the amount in controversy *claimed by Plaintiff*, and does not reflect a judgment of claim value on the part of Defendant. (Resp. Mot. Reconsider 8:1–3) (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant.")). Accordingly, the Court DENIES Plaintiff's Motion for Reconsideration.

**C. Defendant's Motions in Limine**

The Court next turns to Defendant's Motions in Limine. Defendant seeks to "preclude the presentation of argument, evidence, or testimony (1) regarding Plaintiff's workers' compensation claim impairment ratings; (2) asserting 'unreasonable delay' based on the amount of time Plaintiff's lawsuit has taken or other statutory violations based on litigation conduct; (3) asking for a specific dollar amount in damages for alleged unfair claims practices;

(4) consisting of 'Golden Rule' arguments; (5) regarding the wealth or resources of USAA CIC and its legal counsel and 'David and Goliath' comparisons; (6) regarding the length of time Plaintiff has been insured with USAA CIC or the amount of premiums paid; and (7) attempting to solicit legal conclusions from USAA CIC's corporate representative through deposition testimony obtained in violation of the Court's discovery order or live testimony." (Deft. Mots. Limine 1:19–2;1, ECF No. 249). The Court addresses each in turn.

**1. Plaintiff's Impairment Ratings**

Defendant first moves to preclude Plaintiff from introducing the impairment rating generated as part of his worker's compensation claim as evidence of his damages in this case. (*Id.* 3:16–6:7). After the accident in this case, Plaintiff filed a worker's compensation claim. (*Id.* 3:16–17). As part of that claim, an "impairment rating" was generated. (*Id.* 3:19–21). An impairment rating assigns a percentage of impairment to the different parts of a subject's body, or to the subject's body as a whole. *See AMA Guides to the Evaluation of Permanent Impairment: An Overview*, The American Medical Association, https://www.ama-assn.org/practice-management/ama-guides/ama-guides-evaluation-permanent-impairment-overview. Under Nevada's workers' compensation scheme, impairment ratings are prepared using the American Medical Association's ("AMA") *Guide to the Evaluation of Permanent Impairment*, Fifth Edition. Nev. Rev. Stat. 616C.110(1).

Defendant argues that Plaintiff's impairment rating should be excluded because (1) it is not relevant to the jury's determination of Plaintiff's damages, and (2) its probative value is substantially outweighed by the risk of unfair prejudice. (Deft. Mots. Limine 3:21–24). In response, Plaintiff contends that Defendant's arguments contradict positions it took in discovery, and that the impairment record is relevant and helpful to the jury. (Resp. Deft. Mots. Limine 5:7–11:8, ECF No. 263).

First, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Here, Defendant argues that Plaintiff's impairment rating is not relevant because it is a creature of Nevada's workers' compensation framework, which has a different purpose from tort law. (Deft. Mots. Limine 4:4–14). However, as Plaintiff argues, the impairment rating nonetheless reflects Plaintiff's medical records, injury history, and physical evaluation, and thus is relevant to the issue of Plaintiff's damages. (Resp. Deft. Mots. Limine 7:8–11). The Court agrees. Relevance is a low bar to clear, and the Court declines to exclude Plaintiff's impairment rating on the basis of FRE 401 alone.

Second, FRE 403 provides that the Court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, Defendant argues that the probative value of Plaintiff's impairment rating is substantially outweighed by the danger of misleading the jury and wasting time in trial explaining the methodology behind the rating. (Deft. Mots. Limine 4:15–5:26). In response, Plaintiff argues that the impairment rating and the methodology behind it are reliable and would be helpful to the jury, and that excluding the impairment rating would require excluding the workers' compensation award that the rating supported. (Resp. Deft. Mots. Limine 5:7–11:8).

The Court agrees with Defendant that the probative value of Plaintiff's impairment rating is substantially outweighed by the risk of confusing the jury and wasting time on a "mini-trial" explaining the methodology underlying the impairment rating and litigating its effectiveness. In *Rimes v. MVT Servs., LLC*, No. 19-cv-00282-JFH-JFJ, 2020 WL 9073651, at *5–6 (N.D. Okla. Aug. 25, 2020), a district court excluded an impairment rating under FRE 403

using the same logic.[2] Specifically, the *Rimes* court explained that introducing the impairment rating "would result in wasted time as it would be necessary for counsel to explain the purpose, meaning and context of the AMA impairment ratings, which would only invite Defendants' counsel to spend significant time on cross-examination on the issue." *Id.* at *6. Further, when applying FRE 403, the probative value of a piece of evidence "may be calculated by comparing evidentiary alternatives," and the Court should take into account "the full evidentiary context of the case." *Old Chief v. United States*, 519 U.S. 172, 182–84 (1997); *see United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) ("[A] decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question."). Here, Plaintiff's medical experts may testify as to the extent of Plaintiff's injuries without referring to the numeric impairment percentage contained in the impairment rating. The Court thus concludes that the probative value of Plaintiff's impairment rating is substantially outweighed by the danger of confusing the jury, wasting time, and causing undue delay.

Finally, the Court is not persuaded by Plaintiff's argument that excluding Plaintiff's impairment rating necessitates exclusion of Plaintiff's workers' compensation award. The same considerations under FRE 403 which militate towards exclusion of Plaintiff's impairment rating would not apply to a monetary workers' compensation award, nor does Defendant contend that they would. Accordingly, the Court GRANTS Defendant's Motion in Limine to exclude Plaintiff's impairment rating.

**2. Unreasonable Delay**

Defendant next argues that Plaintiff should be precluded from offering evidence that USAA CIC unreasonably delayed or otherwise violated the Nevada Unfair Claims Practices Act ("UCPA") based on the length of this litigation or other litigation conduct. (Deft. Mots.

[2] As Plaintiff points out, this is an unreported, out-of-district case that is not binding on this Court. However, the Court finds the *Rimes* court's analysis under FRE 403 persuasive and adopts it here.

Limine 6:10–8:21). Specifically, Defendant contends that the time consumed by this litigation is not evidence of improper claims handling under the UCPA, which focuses solely on how the insurer handles an insured's *claim*. (*Id.* 6:20–21) (citing *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1243 (D. Nev. 1994)). In response, Plaintiff states that he "does not intend to claim unreasonable delay based upon actions taken by lawyers pursuant to procedural rules or Court-imposed schedules, the time consumed by litigation or Defendant's right to defend this matter." (Resp. Deft. Mots. Limine 13:5-7). Rather, Plaintiff intends to present evidence that, even post-litigation, Plaintiff's claim remained open and pending with no payment tendered. (*Id.* 13:7–10).

Because Plaintiff states that he does not intend to offer the challenged pieces of evidence at trial, the Court DENIES Defendant's Motion in Limine to preclude argument regarding unreasonable delay caused by the length of litigation as moot. *See, e.g.*, *Composite Res. Inc. v. Recon Med. LLC*, No. 2:17-cv-01755-MMD-VCF, 2021 WL 5501104, at *3 (D. Nev. Nov. 22, 2021) (denying motion in limine as moot where opposing party stated they did not intend to introduce challenged evidence).

**3. Specific Dollar Amount of UCPA Damages**

Defendant next moves to preclude Plaintiff from presenting a specific dollar amount for UCPA damages to the jury because "that amount was never disclosed to USAA CIC" as required by FRCP 26(a)(1)(A)(iii). (Deft. Mots. Limine 8:23–25). Defendant contends that because Plaintiff failed to articulate a specific dollar amount of UCPA damages at his deposition, and otherwise failed to produce a computation, Plaintiff is precluded from introducing an exact dollar amount to the jury under FRCP 37(c)(1). (*Id.* 9:16–26) (citing *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008)). Defendant concedes, however, that damages under the UCPA are general damages which "do not lend themselves to computation," and thus no computation is required

under FRCP 26(a)(1)(A)(iii). (*Id.* 10:11–14) (citing *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011)).

Contrary to Defendant's assertion, Plaintiff did provide a computation of the categories of damages claimed. (*See* Twenty-Ninth Suppl. Discl. 41:1–42:19, Ex. 3 to Resp. Deft. Mots. Limine, ECF No. 263-3). Specifically, Plaintiff disclosed that the total amount of damages sought, comprising (1) past and future medical expenses, (2) past and future loss of household services, and (3) past and future medical pain, suffering, anguish, and disability, was computed at $10,000,000. (*Id.* 41:3–8).[3] Plaintiff further provided a computation of past and future medical damages. (*Id.* 41:10–42:8). As Defendant acknowledges, courts look to the information available to an opposing party regarding a plaintiff's basis for damages sought when considering whether to preclude mention of a specific dollar amount. Here, Plaintiff notified Defendant of his intention to ask for general damages at trial, provided a computation of past and future medical damages, and provided medical records and other information sufficient to describe the nature of his alleged injuries. As a result, the Court cannot conclude that Defendant was so deprived of useful information regarding general damages to warrant granting this Motion in Limine. *See, e.g.*, *Iguarta v. Mid-Century Ins. Co.*, No. 2:16-cv-00849-JAD-CWH, 2017 WL 1013869, at *2 (D. Nev. Mar. 14, 2017).

Accordingly, the Court DENIES Defendant's Motion in Limine to preclude introduction of a specific dollar amount of UCPA damages.

**4. "Golden Rule" Arguments**

Defendant next moves to preclude Plaintiff from making any "Golden Rule" arguments, or arguments which ask "the jurors to place themselves in the position of one of the parties to

---

[3] While Plaintiff does not explicitly designate any of those categories as arising out of his UCPA claim, Plaintiff may recover "any damages sustained . . . as a result of the commission of any" unfair claims practice under the UCPA. Nev. Rev. Stat. 686A.310(2).

the litigation, or to grant the recovery they would wish themselves if they were in the same position." (Deft. Mots. Limine 11:19–23) (quoting *Whittier v. Seattle Tunnel Partners*, No. C17-0751RSL, 2022 WL 1625036, at *4 (W.D. Wash. May 23, 2022)) (internal citations and quotations omitted). Plaintiff acknowledges that "Golden Rule" arguments are improper, but opposes the motion because it is "too non-specific to support a blanket pretrial order." (Resp. Deft. Mots. Limine 17:13–17). The Court disagrees. As Defendant points out, other courts in this District have granted similar motions in limine. *See, e.g.*, *Rosas v. Geico Cas. Co.*, No. 2:18-cv-01200-APG-NJK, 2022 WL 2440953, at *4 (D. Nev. Jan. 26, 2022). Accordingly, the Court GRANTS Defendant's Motion in Limine to preclude "Golden Rule" arguments. This applies equally to both parties.

**5. "David and Goliath" Comparisons**

Defendant next moves to preclude Plaintiff from "offering any argument or evidence regarding the wealth, size, or financial resources of USAA CIC or its defense counsel, and from characterizing this case as a 'David and Goliath' contest in the *liability* phase of trial." (Deft. Mots. Limine 12:14–16) (emphasis added). Plaintiff argues in response that Defendant's resources, including "adjusters, access to insurance databases, [and] access to claims histories and prior claims," are relevant to show that Defendant was able to render a prompt evaluation of Plaintiff's claim. (Resp. Deft. Mots. Limine 18:7–11).

Another court in this District addressed this issue in *Borchik v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-cv-00567, 2026 WL 910189 (D. Nev. Jan. 23, 2026). There, the court concluded that the financial wealth of the defendant insurance company was not relevant to whether it did or did not have a reasonable basis for its evaluation of the plaintiff's claim. *Id.* at *3. The *Borchik* court further reasoned that even if it was relevant, its probative value was substantially outweighed by the danger that the jury would find the defendant liable solely because it was a large insurance company. *Id.* However, the *Borchik* court distinguished

between the *financial* resources of the defendant insurance company and its "access to adjusters, insurance databases, and claims histories," reasoning that the latter "may be relevant to the facts at issue." *Id.* The Court finds the *Borchik* court's reasoning persuasive and adopts it here.

Additionally, Plaintiff correctly argues that the financial resources of Defendant would be relevant to the issue of punitive damages. *See Momot v. Mastro*, No. 2:09-cv-00975, 2011 WL 1833349, at *3 (D. Nev. May 13, 2011) ("A defendant's financial condition is relevant to the pursuit of punitive damages."). Because the probative value of Defendant's financial condition is greater with respect to the issue of punitive damages than its probative value with respect to the issue of liability, the Court's FRE 403 analysis is not the same. Other courts in this Circuit have opted to admit evidence of the defendant's financial condition in this situation, subject to a limiting instruction. *See, e.g.*, *Grace v. Apple, Inc.*, No 17-CV-00551-LHK, 2020 WL 227404, at *4 (N.D. Cal. Jan. 15, 2020); *see also* Ninth Cir. Model Civ. J.I. 5.5. cmt. ("If punitive damages are available and evidence of defendant's financial condition is offered in support of such damages, a limiting instruction may be appropriate."). The Court will thus consider a limiting instruction proposed by the parties on this issue.

Accordingly, the Court GRANTS, in part, and DENIES, in part, Defendant's Motion in Limine to preclude evidence regarding its wealth, size, or financial resources. Plaintiff may not introduce evidence regarding the *financial* resources of Defendant, but may introduce evidence regarding Defendant's access to adjusters, insurance databases, and the like. Further, the parties must propose a limiting instruction on the use of Defendant's financial condition with respect to punitive damages no later than October 30, 2026.

**6. Length of Plaintiff's Coverage**

Defendant next moves to preclude Plaintiff from introducing evidence regarding the length of time that Plaintiff has maintained his insurance policy. (Deft. Mots. Limine 14:1–15).

Specifically, Defendant argues that any such evidence is irrelevant to the claims in this case, and should additionally be excluded under FRE 403. (*Id.*). In response, Plaintiff contends that the length of coverage is relevant to his claims under the UCPA, specifically to show that Defendant committed an unfair claims practice by allegedly misrepresenting to Plaintiff that he was insured under USAA, not USAA CIC. (Resp. Deft. Mots. Limine 19:18–24) (citing Nev. Rev. Stat. 686A.310(a) (defining "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to coverage at any time" as an unfair claims practice)). However, Plaintiff does not explain why the *length* of coverage would tend to show that Defendant misrepresented any "pertinent facts or insurance policy provisions," nor why that length would support Plaintiff's entitlement to underinsured motorist benefits.

The Court agrees with Defendant that the length of Plaintiff's coverage is irrelevant to his claims, and accordingly GRANTS Defendant's Motion in Limine to preclude evidence regarding the length of Plaintiff's coverage.

**7. Legal Conclusions**

Defendant next moves to preclude Plaintiff from "attempting to solicit legal conclusions from USAA CIC's corporate representative at trial, either through live or deposition testimony." (Deft. Mots. Limine 14:17–16:25). To be sure, a lay witness cannot testify as to a legal conclusion. Fed. R. Evid. 701. However, Defendant's motion is quite broad, targeting both any in-court testimony from its corporate representative which constitutes a legal conclusion and nineteen (19) pages of the deposition of its corporate representative. (Deft. Mots. Limine 14:22–15:10) (citing USAA CIC Dep. 168:1–189:13, Ex. D to Deft. Mots. Limine, ECF No. 249-4).

Motions in limine must "identify the evidence at issue and state with specificity why such evidence is inadmissible," and should rarely seek to exclude broad categories of evidence, "as the court is almost always better situated to rule on evidentiary issues in their factual

context during trial." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). Here, with respect to the deposition testimony of USAA CIC's corporate representative, Defendant fails to state with specificity the questions it seeks to exclude. While Defendant gives some "examples" of impermissible questions, it essentially asks this Court to wade through the identified section of the deposition transcript to identify any questions which call for a legal conclusion. The Court declines to do so here. *See Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (explaining that judges are not "like pigs . . . hunting for truffles") (internal quotations and citations omitted). Accordingly, the Court DENIES Defendant's Motion in Limine to preclude Plaintiffs from soliciting legal conclusions from USAA CIC's corporate representative. Defendant may lodge objections at trial to attempts by Plaintiff to elicit legal conclusions from their corporate representative.

**D. Plaintiff's Motions in Limine**

The Court next turns to Plaintiff's Motions in Limine, addressing each in turn.

**1. Timing of Legal Representation**

Plaintiff's First Motion in Limine, (ECF No. 252), seeks to preclude evidence regarding "how or why Plaintiff retained counsel" in this case. (First Mot. Limine 4:23–5:1, ECF No. 252). Plaintiff appears to argue that such evidence should be excluded under FRE 403 because it lacks probative value and carries a danger of prejudicing the jury at trial "by suggesting that Plaintiff's retention of an attorney shortly after the accident demonstrates a motive for pecuniary gain." (*Id.* 5:1-4). Plaintiff bases this Motion on questions posed by Defendant at Plaintiff's deposition which "implied that Plaintiff had retained an attorney before seeking medical attention." (*Id.* 3:21–22). However, Plaintiff fails to identify the portion of Plaintiff's deposition which contains this implication, instead referring generally to the deposition transcript. (*See id.*). Further, Defendant explains that in his deposition, Plaintiff testified that he

hired an attorney six months after the accident. (Resp. First. Mot. Limine 3:16–19, ECF No. 268) (citing Johnson Dep. 27:11–28:15, Ex. 1 to First Mot. Limine, ECF No. 252-1).

Without a more specific factual basis, the Court cannot conclude that permitting testimony about when Plaintiff retained counsel would create a danger of unfair prejudice. Accordingly, the Court DENIES Plaintiff's First Motion in Limine.

**2. References to Collateral Sources**

Plaintiff's Second Motion in Limine, (ECF No. 253), seeks to preclude evidence of medical and other treating expenses paid by his insurance company. (Second Mot. Limine 5:4–8:15, ECF No. 253). Plaintiff contends that any such evidence would be barred by Nevada's collateral source rule, which provides that "if an injured party received some compensation for his [or her] injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *Proctor v. Castelletti*, 911 P.2d 853, 854 n.1 (Nev. 1996). Nevada has created "a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose." *Id.* at 854 (emphasis in original). "[E]vidence of payments from a collateral source is unavoidably too prejudicial to be admitted" and "[t]here is an ever-present danger that the jury will misuse the evidence to diminish the damage award." *Id.*

In response, Defendant argues that Nevada's collateral source rule does not apply to cases involving underinsured motorist coverage. (Resp. Second Mot. Limine 4:7–14, ECF No. 264) (citing *Sloane v. State Farm Mut. Auto. Ins. Co.*, No. 3:19-cv-00648-MMD-WGC, 2021 WL 12300323, at *3–4 (D. Nev. Sep. 20, 2021)). Another court in this District has reached the same conclusion, reasoning that the policy rationales underlying the collateral source rule are inapplicable to claims against underinsured motorist insurers. *Sloane*, 2021 WL 12300323, at *4. Underinsured motorist policies "provide for the payment of first-party benefits to the insured based upon compensatory and general damages sustained in motor vehicle accidents

involving uninsured or underinsured motorist who are liable in tort to the insured." *State Farm Mut. Auto Ins. Co. v. Fitts*, 99 P.3d 1160, 1161 (Nev. 2004). "Unlike a case where a plaintiff seeks damages from a tortfeasor and is entitled to the full reasonable amount of damages caused regardless of any discounts in treatment under the collateral source doctrine ... in the context of a contractual claim under an insurance policy, a plaintiff is entitled only to contractual reimbursement from the insurer." *Luna v. State Farm Mut. Auto. Ins., Co.*, Case No. 2:15-cv-01104-RCJ-NJK, 2016 WL 4699692, at *3 (D. Nev. Sep. 7, 2016). Thus, in a UIM dispute, "a court needn't adopt a collateral-source-type rule to avoid a windfall to a bad actor." *Id.*

The Court finds the reasoning of *Sloane* persuasive and adopts it here. Because the collateral source rule is inapplicable to the instant case, the Court DENIES Plaintiff's Second Motion in Limine.

**3. Prior Incidents and Settlements**

Plaintiff next moves to preclude "evidence or references to any accidents, associated injuries, or settlements" other than those related to the December 6, 2017, incident which gave rise to this case. (Third Mot. Limine 4:23–5:11, ECF No. 254). Plaintiff argues in conclusory fashion that any evidence of prior slip and fall accidents suffered by Plaintiff are both irrelevant and subject to exclusion under FRE 403. (*Id.* 5:1–7). As Defendant explains, however, Plaintiff provides minimal justification for these arguments, merely asserting that evidence of prior accidents should be excluded. Defendant also argues that evidence of a prior slip and fall accident at T-Mobile Arena, which occurred six months before the subject car accident, would be relevant to the jury's determination of causation. (Resp. Third Mot. Limine 2:2–21, ECF No. 272). Specifically, Defendant contends that the injuries Plaintiff suffered in the prior slip and fall accident overlap with the injuries he suffered as a result of the subject accident. (*Id.* 2:13–21) (citing *Cornell v. Wal-Mart Stores, Inc.*, No. 3:08-cv-00103-RCJ-VPC, 2010 WL

11591395, at *15 (D. Nev. Jan. 26, 2010) (explaining in an injury case that evidence that plaintiff fell off a ladder "is certainly relevant" because "it suggests an alternate cause for Plaintiff's injuries")).

Without more legal justification from Plaintiff, the Court cannot grant the relief sought. Accordingly, the Court DENIES Plaintiff's Third Motion in Limine.

**4. Exaggeration of Injuries**

Plaintiff next moves to preclude Dr. Ralph Purcell and Dr. Brian Reiss, two of Defendant's expert witnesses, from testifying that Plaintiff has "secondary gain motives," meaning that Plaintiff has exaggerated the injuries he sustained in the subject car accident. (*See generally* Fourth Mot. Limine, ECF No. 255). Specifically, Plaintiff contends that "secondary gain" refers to a psychological disorder that Defendant's experts cannot testify to because they are not psychologists. (*Id.* 7:5–15). However, Defendant explains that neither Purcell nor Reiss offered an opinion in their reports that Plaintiff had secondary gain motives, nor does Defendant intend to elicit that testimony at trial. (Resp. Fourth Mot. Limine 2:9–15, ECF No. 270). Indeed, Plaintiff does not identify any portion of Purcell or Reiss's expert reports disclosing opinions related to secondary gain motives. (*See generally* Fourth Mot. Limine). Accordingly, the Court DENIES Plaintiff's Fourth Motion in Limine as moot.

**5. Portions of Deposition Where Plaintiff is Eating**

Plaintiff next moves to preclude the introduction of any portion of his video deposition where Plaintiff can be seen eating. (Fifth Mot. Limine 4:20–5:8, ECF No. 256). Plaintiff explains that during his deposition, he was not afforded a lunch break, causing him to eat during the deposition. (*Id.* 4:20–22). Plaintiff contends that showing deposition testimony in which Plaintiff is eating would unreasonably annoy, embarrass, or oppress Plaintiff in violation of FRCP 30. (*Id.* 5:4–6). In response, Defendant argues that Plaintiff's Motion should be denied because Plaintiff fails to identify the portions of his deposition where he can be seen

eating. (Resp. Fifth Mot. Limine 4:2–3, ECF No. 273). Defendant further contends that because it has not yet submitted any deposition designation signaling its intent to use Plaintiff's deposition at trial, Plaintiff's Motion it premature. (*Id.* 4:8–18).

The Court agrees with Defendant. Plaintiff fails to identify the portions of Plaintiff's deposition that he seeks to exclude, and his Motion is therefore insufficiently specific for this Court to rule on admissibility. *See Guatay*, 670 F.3d at 987 (explaining that judges are not "like pigs . . . hunting for truffles") (internal quotations and citations omitted). Accordingly, the Court DENIES Plaintiff's Fifth Motion in Limine.

**6. Attorney-Conducted Voir Dire**

Plaintiff next moves the Court to permit the attorneys in this case "to question the prospective jurors at whatever length counsel and the Court deems necessary to secure a fair and impartial jury." (Sixth Mot. Limine 7:12–15, ECF No. 257). Plaintiff also moves to preclude the attorneys in this case from asking any "rehabilitation questions" which attempt to rehabilitate a prospective juror who has shown bias or prejudice. (*Id.* 10:2–6). In response, Defendant does not oppose Plaintiff's request that the attorneys participate in voir dire, but does oppose Plaintiff's request to preclude rehabilitation of prospective jurors. (Resp. Sixth Mot. Limine 2:11–3:6, ECF No. 274).

As Defendant explains, "[t]he content and conduct of [voir dire questioning is] generally committed to the sound discretion of the district court in both civil and criminal cases." *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). The Court will permit the attorneys in this case to question prospective jurors during voir dire, but the length of attorney questioning will ultimately be subject to the Court's discretion. In light of Defendant's non-opposition, the Court GRANTS Plaintiff's Sixth Motion in Limine with respect to the attorneys in this case being permitted to question prospective jurors. The Court will exercise its discretion with respect to the length of that questioning.

With respect to Plaintiff's request to preclude any rehabilitation questions, the Court is less persuaded. Plaintiff offers no legal justification for precluding rehabilitation questions aside from general statements warning against empaneling a jury with a biased juror. (*See* Sixth Mot. Limine 9:10–22). However, as Defendant explains, a juror's "initial bias may be irrelevant, at the trial judge's discretion, when that juror commits to lay aside those feelings and reach a verdict based on the evidence presented and the court's instructions." (Resp. Sixth Mot. Limine 3:1–4) (quoting *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220 (9th Cir. 1997)) (internal quotation marks omitted). Accordingly, the Court DENIES Plaintiff's Sixth Motion in Limine with respect to rehabilitation questions.

**7. Wage Loss Claim**

Plaintiff next moves to preclude Defendant from introducing evidence suggesting that "Plaintiff failed to comply with a material provision of his contract in this matter by not providing wage loss documentation upon request." (Seventh Mot. Limine 5:5–8, ECF No. 258). Plaintiff argues that because he is not presenting a wage loss claim in this case, any evidence regarding his alleged failure to provide documentation of past or future wage loss to Defendant is irrelevant and highly prejudicial. (*Id.* 5:21–6:6). In response, Defendant maintains that it does not intend to offer evidence suggesting that Plaintiff is currently pursuing a wage loss claim, but that evidence relating to Plaintiff's alleged failure to provide documentation of wage loss is relevant to the way Defendant handled Plaintiff's claim, and thus relevant to Plaintiff's UCPA claim. (Resp. Seventh Mot. Limine 1:24–2:4, ECF No. 266).

The Court agrees with Defendant that communications between the parties regarding documentation of Plaintiff's loss of past and future wages is relevant to Plaintiff's UCPA claim. Defendant explains that in 2021, Plaintiff requested a breakdown of Defendant's evaluation of his claim, including "past and future wage loss." (*Id.* 2:13–15) (citing Jan. 11, 2021 Letter, Ex. A to Resp. Seventh Mot. Limine, ECF No. 266-1). Defendant further contends that it sent

several letters to Plaintiff requesting documentation of “past and future wage loss.” (*Id.* 2:21–24). Because the UCPA addresses how an insurer handles an insured’s claim, the Court agrees that evidence of communications between the parties regarding “past and future wage loss” could be relevant to Plaintiff’s UCPA claim. *See, e.g.*, *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (citing Nev. Rev. Stat. 686A.310). Further, Plaintiff provides no specific basis for excluding this evidence under FRE 403, stating only in conclusory fashion that it would be “severely and unfairly prejudicial to Plaintiff’s case.” (Seventh Mot. Limine 6:2–3). Such general characterizations of the evidence will not suffice. Accordingly, the Court DENIES Plaintiff’s Seventh Motion in Limine.

**8. Certain Documents in Plaintiff’s Workers’ Compensation File**

Plaintiff next moves to preclude the introduction of all documents in Plaintiff’s Workers’ Compensation file except for medical records and medical documents. (Eighth Mot. Limine 4:23–5:7, ECF No. 259). Plaintiff characterizes these documents broadly, describing them as “including emails, letter correspondence and attachments, fax delivery conformations [sic], coversheets, ISO claim searches, physician disability statements that are not signed by physicians, blank forms or forms that are not signed by physicians and health insurance forms.” (*Id.* 5:3–7). While Plaintiff provides the Bates Number for each of these documents in a footnote, (*id.* 5:7 n.7), he does not describe with specificity the contents of each document nor the individualized basis for excluding each.

In response, Defendant contends that it “does not intend to offer Plaintiff’s entire 532-page workers’ compensation file into evidence,” and further argues that Plaintiff’s Motion should be denied for lack of specificity. (Resp. Eighth Mot. Limine 2:9–15, ECF No. 265). The Court agrees. Under Local Rule 16-3(a), motions in limine “must identify the particular evidence or argument to be excluded and state” the reasons why it is inadmissible. LR 16-3(a). Here, Plaintiff refers generally to a large volume of documents without specifically explaining

the legal basis for exclusion. As stated above, it is not the Court's burden to comb through the records mentioned by Plaintiff to determine whether each is admissible at this stage. *See Guatay*, 670 F.3d at 987 (explaining that judges are not "like pigs . . . hunting for truffles") (internal quotations and citations omitted). Accordingly, the Court DENIES Plaintiff's Eighth Motion in Limine.

**9. Opinions Not Included in Reports**

Plaintiff next moves to preclude any of Defendant's medical experts from testifying to opinions not disclosed in their expert reports. (Ninth Mot. Limine 6:13–7:11, ECF No. 260). Plaintiff focuses on opinions regarding his knees and shoulders, arguing that three of Defendant's experts, Dr. Purcell, Dr. Reiss, and Professor Jeffrey Thomas, must be precluded from giving any opinion regarding Plaintiff's knees and shoulders. (*Id.* 6:22–7:16). In response, Defendants agree that expert witnesses are only permitted to testify regarding matters disclosed in their expert reports, and states that it does not intend to elicit opinions not disclosed in those reports. (Resp. Ninth Mot. Limine 4:10–18, ECF No. 271). However, Defendant contends that both Dr. Purcell and Dr. Reiss should be permitted to testify regarding Plaintiff's knees and shoulders. (*Id.* 4:21–8:7). The Court addresses each expert witness in turn.

**a. Dr. Ralph Purcell**

Plaintiff first argues that Dr. Purcell should not be permitted to testify regarding Plaintiff's knees and shoulders because his expert report makes no mention of Plaintiff's knees and shoulders outside of the following statement:

> Despite the plethora of diagnoses described above, the examinee only sustained a cervical strain, and bilateral knee contusions, and bilateral shoulder strains as a result of the referenced accident. These were soft tissue and self-limited pathologies that resolved by approximately six weeks after the referenced accident, if not sooner.

(Purcell Rep. at 22, Ex. 1 to Final Mot. Limine, ECF No. 262-1). Contrary to Plaintiff's representation, Dr. Purcell's report contains extensive discussion of injuries to Plaintiff's knees

and shoulders. (*See generally id.*); (Resp. Ninth Mot. Limine 5:15–28) (listing several areas of Dr. Purcell's report which discuss injuries to Plaintiff's knees and shoulders). The relief Plaintiff seeks is somewhat unclear; to the extent that Plaintiff asks the Court to limit Dr. Purcell's testimony to the identified paragraph, the Court declines to do so. Plaintiff has not shown why Dr. Purcell should be precluded from testifying regarding the other portions of his report referring to Plaintiff's knees and shoulders. While true that, generally, Dr. Purcell's testimony will be limited to opinions disclosed in his report, the Court sees no reason to further limit that testimony to only the identified paragraph. Accordingly, the Court DENIES Plaintiff's Ninth Motion in Limine with respect to Dr. Purcell.

**b. Dr. Brian Reiss**

Plaintiff next argues that Dr. Reiss should not be permitted to testify as to Plaintiff's knees and shoulders because (1) Dr. Reiss did not examine Plaintiff's knees and shoulders, and (2) Dr. Reiss failed to provide any opinions regarding Plaintiff's knees and shoulders. (Ninth Mot. Limine 6:17–22). However, as Defendant explains, it is not that simple — Dr. Reiss's report makes frequent reference to plaintiff's knees and shoulders, before ultimately concluding that the subject car accident had "no permanent effects" on Plaintiff. (Reiss Rep. at 3–16, Ex. 2 to Fourth Mot. Limine, ECF No. 255-2). The Court agrees with Defendant that the natural reading of this conclusion is that, in Dr. Reiss's opinion, the subject accident had no permanent effects on Plaintiff, *including* his knees and shoulders. Without more justification from Plaintiff, the Court declines to prohibit Dr. Reiss from testifying regarding injuries to Plaintiff's knees and shoulders. Accordingly, the Court DENIES Plaintiff's Ninth Motion in Limine with respect to Dr. Reiss.

**c. Professor Jeffrey Thomas**

Plaintiff lastly argues that Professor Thomas should be limited to the opinions disclosed in the two expert reports he authored. (Ninth Mot. Limine 7:8–11). Plaintiff makes no mention

of his knees and shoulders with respect to Professor Thomas's opinions. (*Id.*). As Defendant argues in its response, however, Plaintiff raises no real concern with Professor Thomas; it is axiomatic that expert witnesses may only testify regarding matters disclosed in their expert reports. *See U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011). Further, Plaintiff fails to identify a specific opinion of Professor Thomas that would run afoul of that rule, as required by Local Rule 16-3(a). Accordingly, the Court DENIES Plaintiff's Ninth Motion in Limine with respect to Professor Thomas. However, Professor Thomas, like all other expert witnesses, will be limited in his trial testimony to opinions disclosed in his expert report.

**10. Motion to Limit Professor Thomas's Testimony**

Plaintiff next moves to preclude Professor Jeffrey Thomas from providing any (1) medical opinions, (2) opinions regarding the value of Plaintiff's case post-litigation, (3) opinions regarding the propriety of removal, (4) opinions regarding the interpretation of the insurance agreement, (5) testimony that Defendant did not commit fraud or act in bad faith, (6) testimony as to Defendant's state of mind, (7) testimony that Defendant did not breach a legal duty owed to Plaintiff, or (8) opinions regarding Defendant's litigation strategy or post-litigation conduct. (Tenth Mot. Limine 5:17–9:4, ECF No. 261). The Court addresses each in turn.

First, with respect to Professor Thomas's medical opinions, Plaintiff argues that Thomas is not a medical doctor and must be prohibited from expressing any medical opinions at trial. (*Id.* 5:17–6:14). The only example of Thomas's medical opinions provided by Plaintiff is Thomas's statement that Plaintiff was suffering from degenerative disease in his left knee prior to the crash. (*Id.* 5:19–22). However, as Defendant points out, the lone example mustered by Plaintiff is not actually a medical opinion. Rather, Thomas states that "USAA CIC noted that Mr. Johnson's treating physician had found some evidence of degenerative disease in Mr.

Johnson's left knee." (Thomas Rep. at 20, Ex. 1 to Tenth Mot. Limine, ECF No. 261-1). This is not Thomas's medical opinion that Plaintiff *was suffering* from degenerative disease in his left knee at the time of the subject accident, but rather a recitation of the findings of Plaintiff's treating physician. Indeed, Thomas only mentions potential degeneration in Plaintiff's knee with respect to his opinion that Defendant complied with insurance industry customs and practice in handling medical evidence. (*See generally id.*). Defendant also notes that Thomas is not expected to offer any medical opinions at trial. (Resp. Tenth Mot. Limine 5:12–18, ECF No. 269). Accordingly, the Court DENIES Plaintiff's Tenth Motion in Limine with respect to Thomas's medical opinions. If Thomas attempts to render an actual medical opinion at trial, Plaintiff may revisit this issue.

Second, with respect to Thomas's opinions regarding the value of Plaintiff's case post-litigation, the Court first notes that Plaintiff fails to identify the specific portions of Thomas's report that contains those opinions. (*See* Ninth Mot. Limine 7:21–24). Without a more particularized description of the opinions Plaintiff seeks to exclude, the Court declines to exclude them now. Accordingly, Plaintiff's Tenth Motion in Limine is DENIED with respect to Thomas's opinions regarding the value of Plaintiff's case.

With respect to the remaining areas of testimony targeted by Plaintiff, he also fails to identify specific portions of Thomas's report containing those opinions. Plaintiff provides no examples of Thomas opining on (1) the propriety of Defendant's removal, (2) interpretation of the insurance agreement, (3) bad faith on the part of Defendant, (4) Defendant's state of mind, (5) Defendant's breach of a legal duty, or (6) Defendant's litigation strategy or post-litigation conduct. (*See* Tenth Mot. Limine 7:10–9:4). Defendant explains that Thomas only remarks on these opinions to offer a rebuttal to Plaintiff's expert, Marc Beckerman. (Resp. Tenth Mot. Limine 6:6–28). Defendant further notes that the Court's prior Order prohibited Beckerman from testifying in support of those same opinions. (*Id.* 6:6–16); (*see* Order on Mot. Exclude

18:3–11). Thus, if Beckerman complies with the Court's order, Thomas will have no reason to offer that rebuttal testimony. Accordingly, the Court DENIES Plaintiff's Tenth Motion in Limine with respect to the remaining opinions of Professor Thomas.

**11. Motion to Limit Dr. Purcell's Testimony**

Finally, Plaintiff moves to preclude Dr. Purcell from offering fifty-eight (58) allegedly undisclosed opinions contained in his rebuttal report. (Final Mot. Limine 5:20-18, ECF No. 262). Notably, Plaintiff only cites seventeen (17) of those fifty-eight (58) opinions, and each merely recites one of Plaintiff's pre-existing conditions. (*Id.* 6:4–18). Plaintiff argues that these opinions should be excluded because they were not disclosed in Dr. Purcell's initial report, and instead were disclosed for the first time in his rebuttal report. (*Id.* 6:20–21). However, Plaintiff does not cite any specific portion of Dr. Purcell's initial report to support that argument, instead attaching the entire report as an exhibit.

Further, as Defendant explains, each of the seventeen (17) opinions expressly referenced by Plaintiff *were* disclosed in Dr. Purcell's initial report. (*See* Resp. Final Mot. Limine 6:1–7:20, ECF No. 267) (providing page numbers of Purcell's initial report where the seventeen (17) opinions were initially disclosed). Without a more particularized basis from Plaintiff, the Court declines to so limit Dr. Purcell's testimony at this time. Accordingly, the Court DENIES Plaintiff's Final Motion in Limine. Dr. Purcell may testify to opinions included in both his initial and rebuttal report, unless Plaintiff can demonstrate that the opinion was not included in his initial report.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Correct, (ECF No. 236), is **GRANTED**.

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to **STRIKE** the Court's Order Granting, in Part, and Denying, in Part, Defendant's Motion to Exclude Expert Testimony of Marc Beckerman, (ECF No. 234).

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file an Amended Version of the Court's Order Granting, in Part, and Denying, in Part, Defendant's Motion to Exclude Expert Testimony of Marc Beckerman, which contains the correct description of the Court's Order Granting, in Part, Defendant's Motion for Summary Judgment, (ECF No. 179).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 235), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine, (ECF No. 249), are **GRANTED**, in part, and **DENIED**, in part.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine, (ECF No. 249), are **GRANTED** with respect to (1) Plaintiff's impairment rating, (2) "Golden Rule" arguments, and (3) the length of Plaintiff's coverage.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine, (ECF No. 249), are **GRANTED**, in part, with respect to evidence regarding the financial resources of Defendant. The parties must provide a proposed limiting instruction regarding the use of Defendant's financial resources no later than **October 30, 2026**.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine, (ECF No. 249), are **DENIED** with respect to (1) unreasonably delay caused by the length of litigation, (2) introduction of a specific dollar amount of UCPA damages, and (3) soliciting legal conclusions from Defendant's corporate representative.

**IT IS FURTHER ORDERED** that Plaintiff's First Motion in Limine, (ECF No. 252), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion in Limine, (ECF No. 253), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Third Motion in Limine, (ECF No. 254), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Fourth Motion in Limine, (ECF No. 255), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Fifth Motion in Limine, (ECF No. 256), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Sixth Motion in Limine, (ECF No. 257), is **GRANTED**, in part, and **DENIED**, in part. The attorneys may question prospective jurors during voir dire subject to the Court's discretion. However, Plaintiff's request to preclude rehabilitation questions is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Seventh Motion in Limine, (ECF No. 258), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Motion in Limine, (ECF No. 259), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Ninth Motion in Limine, (ECF No. 260), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Tenth Motion in Limine, (ECF No. 261), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Final Motion in Limine, (ECF No. 262), is **DENIED**.

**DATED** this 26 day of October, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT